2009 WY 69

**LUCKY GATE RANCH, L.L.C., a Wyoming Limited Liability Company, Appellant (Plaintiff),**

v.

**BAKER & ASSOCIATES, INC., a Nebraska Corporation, and John T. Baker, an individual, Appellees (Defendants).**

No. S–08–0096.

Supreme Court of Wyoming.

May 28, 2009.

Representing Appellant: Lucas Buckley, Matthew Kaufman, and Michael Rosenthal, Hathaway & Kunz, PC, Cheyenne, Wyoming. Argument by Mr. Buckley.

Representing Appellees: Richard Mincer and Lindsay Woznick, Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Ms. Woznick.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Lucky Gate Ranch, L.L.C., filed suit against Appellees, John Baker, and Baker and Associates, Inc., ("Baker"), seeking damages resulting from Baker's failure to provide engineering and surveying services. The district court granted summary judgment in favor of Baker finding that the litigation was not commenced within the statute of limitations mandated by Wyo. Stat. Ann. § 1–3–107 (LexisNexis 2007). Lucky Gate challenges that decision. We affirm.

## ISSUES

[¶ 2] Lucky Gate states the issues presented for our review as follows:

1. Whether the district court erred in granting summary judgment in favor of Appellees based on an alleged failure to timely file suit.

    a. Whether the cause of action accrued and suit was filed within the applicable statute of limitations period.

    b. Whether the district court erred in determining that equitable estoppel does not bar Appellees' statute of limitations arguments.

## FACTS

[¶ 3] Baker is a Nebraska corporation that provides engineering and surveying services. John Baker is an officer of Baker and is a civil engineer licensed as a Professional Engineer by the Wyoming Board of Registration for Professional Engineers and Professional Land Surveyors. Lucky Gate engages in farming and ranching operations in Goshen County, Wyoming. Historically, Lucky Gate has farmed corn, alfalfa, and soy beans using flood irrigation supplied by a water right in Horse Creek. To make more efficient use of its water, Lucky Gate wanted to switch from flood irrigation to a center pivot sprinkler system and offset some of the costs of that switch by participating in the federal government's Environmental Quality Incentives Program, under which part of the cost of conversion would be paid for by the Department of Agriculture. This conversion required authorization from the Wyoming State Engineer to change the point of use.

[¶ 4] Lucky Gate hired Baker to perform a land survey and to prepare the materials required to change the point of use. Lucky Gate entered into a written contract with Baker on March 29, 2004. According to the terms of the written contract, the parties agreed that:

*Deliverables:* Upon completion of this project, Baker & Associates will provide the Client the following:

a. A map suitable for submission to the Wyoming State Engineer's Office. (Exhibit)

b. Property corners marked in accordance with State Law and corner records will be filed at the County Court House. (Note: This survey requires the subdivision of Sections 30 and 31 and the location of canal easements)

c. A petition for the State Engineer's Office to change the point of use. (Exhibit)

. . .

*Scheduling:* The above-described Scope of Work will be completed within 30 working days from authorization to proceed. . . .

Baker estimated the total cost for this project to be between two and five thousand dollars. Baker began the project shortly after the agreement was signed. On April 24, 2004, Lucky Gate received a bill from Baker in the amount of $1,326.40. Lucky Gate paid the bill in full. Although the contract required Baker to provide Lucky Gate a "map suitable for submission to the Wyoming State Engineer's Office" and a "petition for the State Engineer's Office to change the point of use," it is undisputed that Baker never provided those documents to Lucky Gate. Instead, Baker told Lucky Gate that it had submitted the documents directly to the State Engineer's Office. Throughout the summer, Lucky Gate asked Baker about the status of the application. Baker repeatedly assured Lucky Gate that a decision from the State Engineer's Office would be forthcoming in the near future. As time passed with no action, Lucky Gate became increasingly concerned and, in the fall of 2004, contacted the State Engineer's Office directly to determine the status of the application. They were told that no application had been filed.

[¶ 5] When confronted, Baker did not deny that it had failed to submit the application. Baker assured Lucky Gate that the point of use would be changed in time for the 2005 growing season. In an apparent attempt to fulfill their obligation to Lucky Gate, Baker hired High Plains of Wyoming to complete the project. High Plains submitted an invoice to Baker, dated February 18, 2005, for $3,609.67 for the work it had per-formed through that date. Baker forwarded the invoice to Lucky Gate with an accompanying letter dated March 1, 2005. The letter stated:

The work has been completed on the above listed project and a final bill from High Plains of Wyoming is enclosed along with a copy of the invoice from us, which has been paid.

In the agreement that was between Baker & Associates and . . . Lucky Gate Ranch the fee would be between $2,000 and $5,000. As you will see Baker & Associates['] bill which has been paid was in the amount of $1,326.40 and the invoice from High Plains of Wyoming is for the amount of $3,609.67 these two figures add up to $4,936.07. We would ask that you forward your payment [directly] to High Plains of Wyoming.

[¶ 6] On March 3, 2005, Lucky Gate's attorney sent Baker two letters. The first letter generally requested more specifics regarding the work performed by High Plains and reflected in its invoice. The second letter stated, in relevant part:

This letter is to put you on notice that by failing to timely complete its work, as required by its contract with Lucky Gate, Baker & Associates has caused Lucky Gate at least a year's delay in relocating its use of irrigation water. Because the 2005 crop year is just beginning, we do not know if Baker & Associates' breach of contract will damage Lucky Gate, and result in a claim. . . . [I]f 2005 is not an unusually wet year, there is a good chance that such damages will occur. . . . At the appropriate time, we will notify you if damages have occurred, and the extent of any such damages.

In a letter to Lucky Gate's counsel dated March 24, 2005, Baker requested additional detail "as to how exactly these 'future damages' may be incurred and why." On April 5, 2005, Lucky Gate's counsel, by letter, responded that possible damages included the difference between the receipts from the sale of the actual 2005 crop and the receipts from what the 2005 crop would have been if the new irrigation system had been used. The letter also raised the possibility of an in-

crease in the purchase price of the irrigation equipment between the expected and actual install dates. On April 7, 2005, Baker sent Lucky Gate itemized invoices for High Plains' work. On May 5, 2005, Lucky Gate's attorney sent Baker the following letter:

> [Lucky Gate] has reviewed the itemized invoices that you sent to me with your letter of April 7, 2005. It appears to [Lucky Gate], and I agree, that High Plains of Wyoming had to duplicate all of the work that your firm did on the project. This was not the fault of Lucky Gate Ranch, LLC, but solely the fault of your firm.

> [Lucky Gate] tells me that [it] has already paid $1,326.40 to your firm, and Lucky Gate is therefore entitled to a refund of that amount. Rather than have you send a refund, however, [Lucky Gate] is going to deduct the $1,326.40 from High Plains' bill of $3,609.66, and pay $2,283.26 to High Plains. With this letter, we request that you pay the remaining $1,326.40 of High Plains' invoice directly to High Plains. After that payment, all future charges, if any, from High Plains will be paid directly by Lucky Gate to High Plains.

In response, Baker sent Lucky Gate the following letter dated May 10, 2005, accompanied by a check for $1,326.40:

> We received your letter dated May 5, 2005 in regards to the detailed invoices provided to you. As you are aware, when the original contract between Lucky Gate, LCC and Baker and Associates was signed in 2004 we had a licensed Wyoming Surveyor ... on staff, and shortly after initiation of this contract [he] ceased to work for Baker & Associates. All work to that point was turned over to High Plains of Wyoming. Their ability to turn around or convey our work to that point into a final petition is beyond our control. We made a good faith effort to complete the terms of our agreement by soliciting the services of High Plains to complete services we could not ... provide based on [our] current staff. We recommend that any further services be handled directly with High Plains of Wyoming or another firm.

> We regret that this endeavor did not work out as we had intended and we regret any shortcomings that resulted as a result of [the surveyor]'s actions. Because of the current situation and dissatisfaction of our services we have enclosed a check for the amount requested in your letter, $1,326.40. We hope you understand that we have made every effort to try to comply with the terms of our Agreement but because of circumstances and work completed by others to this point we feel that there is little more that we can do.

The record does not reveal when this letter was received by Lucky Gate.

[¶ 7] Meanwhile, High Plains sent Baker a letter dated May 11, 2005. The letter stated that "the research documentation High Plains of Wyoming received at the beginning of the project [was] not adequate to prepare the proper documentation." High Plains informed Baker that completing the project would require starting over again, and that doing so was not cost effective. The letter also cited undisclosed "billing problems." Baker did not forward this letter to Lucky Gate. Lucky Gate discovered that High Plains had withdrawn from the project on or about June 28, 2005 during a telephone conversation with High Plains. High Plains told Lucky Gate that the data from Baker's work was not acceptable for submission to the State Engineer's Office, that the project had been "left hanging" by Baker, that the original cost estimate by Baker was too low given the nature of the project, and that the work done by Baker up to that time had no value. Later, upon recommendation from High Plains, Lucky Gate contacted another individual for assistance with the application to the State Engineer's Office. A new application to change the point of use for the water rights was prepared and submitted to the State Engineer's Office in December 2005. The application was approved in February 2006.

[¶ 8] On May 11, 2007, Lucky Gate filed suit. Baker moved for summary judgment based upon its contention that Lucky Gate failed to commence the action within the applicable limitation period. Lucky Gate resisted the motion. It contended that the

limitation period had not elapsed, and alternatively asserted that Baker should be estopped from raising the statute of limitations as a defense. The court granted the motion for summary judgment stating the reasons for its ruling in a decision letter. The court determined:

> Without question, by May 5, 2005, Lucky Gate knew it had a claim against Baker and that it had suffered at least $1,326.40 in damages. The statute of limitations ... would have run from at least May 5, 2005. Lucky Gate argues that it did not know all of its damages until later, and that it later discovered more detail about Baker's failure to properly perform the work. Neither of these facts, even if true, prevent[s] the statute of limitations from beginning on May 5, 2005. Lucky Gate filed this case on May 11, 2007, more than 2 years after May 5, 2005. Based on the undisputed facts, Lucky Gate failed to file its case within the time allowed....

(Paragraph breaks omitted.) Regarding Lucky Gate's assertion of equitable estoppel, the court concluded:

> Although Baker's total failure to meet its contractual and professional responsibility is incredibly egregious, such conduct does not support estoppel. Lucky Gate knew it had a claim against Baker, knew some of its damages, and failed to file suit within the statute of limitations. Nothing in the evidence indicates that Baker induced that delay after May 5, 2005. Estoppel does not apply.

An order granting Baker's motion for summary judgment was entered on April 8, 2008. Lucky Gate appealed.

### STANDARD OF REVIEW

[¶ 9] "Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision." *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co.*, 2008 WY 101, ¶ 8, 191 P.3d 125, 129 (Wyo.

2008). Our standard for determining if summary judgment was properly granted is well settled.

> Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). *Accord, e.g., Jacobs Ranch Coal Co.*, ¶ 8, 191 P.3d at 128; *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.* We view the record in the light most favorable to the party opposing summary judgment and give that party the benefit of all favorable inferences that may be fairly drawn from the record. *E.g., Stevens v. Elk Run Homeowners' Ass'n, Inc.*, 2004 WY 63, ¶ 11, 90 P.3d 1162, 1165 (Wyo.2004).

*Hull v. D'Arcy*, 2009 WY 30, ¶ 7, 202 P.3d 417, 420 (Wyo.2009).

### DISCUSSION

#### Statute of Limitations

[¶ 10] Lucky Gate filed its complaint on May 11, 2007. The district court determined that Lucky Gate's claim was barred by Wyo. Stat. Ann. § 1–3–107. Lucky Gate agrees that Wyo. Stat. Ann. § 1–3–107 is the relevant statute of limitations but contends that its cause of action accrued on or after May 11, 2005 and that its complaint was timely filed within the two-year limitation period provided by Wyo. Stat. Ann. § 1–3–107.[1]

[¶ 11] The district court, reviewing the evidence in the light most favorable to Lucky Gate, described Baker's failure to meet its professional and contractual obligation as "incredibly egregious." The existence of a potentially meritorious claim, however, does not prevent dismissal of an untimely lawsuit.

---

1. The contract contained a choice of law provision mandating application of Nebraska law to disputes involving the contract. Baker contends that Lucky Gate's claim is time barred under both Nebraska and Wyoming law. In spite of the potential conflict of law issue, the district court applied the Wyoming statute of limitations because the Wyoming statute appeared to provide Lucky Gate with the longest time to commence litigation. We will take the same approach.

Statutes of limitation have long been a part of the jurisprudence of the United States, all its states and the State of Wyoming. They are pragmatic devices to save courts from stale claim litigation and spare citizens from having to defend when memories have faded, witnesses are unavailable by death or disappearance and evidence is lost. Statutes of limitation are arbitrary by their very nature and do not discriminate between the just and unjust claim. They are not judicially made but represent legislative and public policy controlling the right to litigate.... The statutes operate against even the most meritorious of claims and courts have no right to deny their application.... When considering the statute of limitations, the nature of injury, its extent, the amount of money damages involved, social considerations, and the emotional appeal the facts may have must pass to the background. The circumstances are only significant in the bearing they may have on where the cause of action arose, when it arose and when the time expired for pursuing the applicable judicial remedy.

*Duke v. Housen,* 589 P.2d 334, 340 (Wyo. 1979).

[¶ 12] Lucky Gate contends that the limitation period could not have started before May 11, 2005, because none of the damages that it sought in its complaint had occurred by that time. In its complaint, Lucky Gate sought the following damages: 1) Increased costs for the purchase and installation of the center pivot sprinkler system, due to the lengthy delay in purchasing the center pivot sprinkler system; 2) Lost income from crop loss and/or substantially diminished crop production due to an inability to use the center pivot irrigation during one or more growing seasons; and, 3) Other damages to be proven at trial. Essentially, Lucky Gate contends that its cause of action did not accrue until after the 2005 growing season had been completed. Lucky Gate argues that its cause of action is not time barred under Wyo. Stat. Ann. § 1–3–107 until two years from that date. We disagree for two reasons. First,

pursuant to the plain language of the statute, Lucky Gate's cause of action is time barred if not commenced within two years of the "act, error or omission" giving rise to the cause of action. Second, if the two-year time limit starts to run upon "accrual" of the cause of action, Lucky Gate's claim is still time barred because the cause of action accrued on or before May 5, 2005.

[¶ 13] It is undisputed that the contract obligated Baker to perform its services within 30 working days and that time period would have ended in May 2004.[2] The contract required Baker to conduct a survey and mark property corners, to file the corner records at the "County Court house," to provide Lucky Gate with a map suitable for submission to the State Engineer's Office, and to provide Lucky Gate with a petition for the State Engineer's Office to change the point of use. It does not appear that Baker met any of its contractual obligations. It is undisputed that Baker never provided Lucky Gate with the petition to change the point of use. The record suggests that Lucky Gate may have been initially unaware of Baker's non-performance because Baker assured Lucky Gate that the petition had been filed with the State Engineer's Office. It is undisputed, however, that Lucky Gate learned from the State Engineer's Office in the fall of 2004 that the petition had not been filed.

[¶ 14] Wyo. Stat. Ann. § 1–3–107 states, in pertinent part:

(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

(i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

---

**2.** The phrase "working days" is not defined in the contract, but is presumably meant to exclude weekends and any legal holidays within the rele-

vant period. The contract was signed by both parties on March 29, 2004. Thirty working days would have expired in early May 2004.

(A) Not reasonably discoverable within a two (2) year period; or

(B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

. . .

(iv) If under Paragraph (i) or (ii) of this subsection, the alleged act, error or omission is discovered during the second year of the two (2) year period from the date of the act, error or omission, the period for commencing a lawsuit shall be extended by six (6) months.

Based upon the plain language of the statute, unless an exception applies, a lawsuit must be commenced "[w]ithin two (2) years of the date of the alleged act, error or omission." Wyo. Stat. Ann. § 1–3–107(a)(i). Lucky Gate's cause of action in this case is premised upon Baker's failure to fulfill its contractual obligations. Paragraphs 35 and 36 of the complaint are illustrative:

35. Defendants did, by their acts and omissions, breach the contract as set forth above, by failing to timely and professionally complete the survey and submit it with the appropriate paperwork to the SEO. In so doing, Defendants failed to exercise professional care that met the accepted standard of care that would be observed by professional engineers, professional land surveyors, and engineering and surveying corporations, in the same line of practice. Accordingly, Defendants' breach of the contract constituted a violation of the duty of care owed to Lucky Gate.

36. Defendants' breach of the terms of the Contract and the resulting professional negligence was the proximate cause of the damages incurred by Lucky Gate, as set forth under "DAMAGES," below.

[¶ 15] The "act, error or omission" that provides the basis for Lucky Gate's cause of action is the breach of contract that occurred in May 2004. Lucky Gate learned definitively, in the fall of 2004, that Baker had not submitted the petition to the State Engineer's Office. Based upon the plain language of the statute, Lucky Gate's claim was barred when litigation was not commenced within two years of the contractual breach. The limitation period would have expired in May 2006. From a practical perspective, the fact that Lucky Gate learned in the fall of 2004 that the petition had not been filed with the State Engineer's Office does not change the expiration date of the limitation period. If the alleged "act, error or omission" was discovered in the second year, "the period for commencing a lawsuit shall be extended by six (6) months." Wyo. Stat. Ann. § 1–3–107(a)(iv). Because Lucky Gate discovered the breach in the first year, however, the limitation period is still measured from "the date of the alleged act, error or omission." Wyo. Stat. Ann. § 1–3–107(a)(i).

[¶ 16] Lucky Gate asserts that its cause of action did not accrue until it incurred damages related to the 2005 growing season. Even if we considered that time to be the date of discovery, under the plain language of the statute, the time to file suit would only have been extended for an additional six months from the "act, error or omission." If the cause of action had been discovered in the second year, the limitation period would have expired in November 2006 (two years and six months from May 2004). Wyo. Stat. Ann. § 1–3–107(a)(iv). The statute also provides an extended limitation period when the cause of action was not "reasonably discoverable" or not discovered within the two-year period "despite the exercise of due diligence." Wyo. Stat. Ann. § 1–3–107(a)(i)(A),(B). Lucky Gate does not claim that the statutory exception applies here.

[¶ 17] Lucky Gate contends that the limitation period set forth in Wyo. Stat. Ann. § 1–3–107 does not begin until the cause of action "accrues," rather than the date of the act, error or omission. According to Lucky Gate, the cause of action did not accrue until it had incurred damages related to the 2005 growing season. Under this approach, Lucky Gate asserts that the limitation period would not have expired until sometime in the summer or fall of 2007, and the May 11, 2007 filing of the complaint was timely. Baker asserts that the cause of action had accrued, at the latest, by May 5, 2005 when Lucky

Gate's attorney demanded reimbursement for the $1,326.40 paid to Baker.

[¶ 18] In conducting a statute of limitations analysis, determination of the date when a cause of action has accrued is often conclusive. Many statutes specifically state that litigation must be commenced within a specific timeframe after the cause of action accrues. For example, a claim for the recovery of real property must be brought "within ten (10) years after the cause of such action accrues." Wyo. Stat. Ann. § 1-3-103. The date when the cause of action accrues also starts the applicable limitation periods for actions founded upon breach of contract, fraud, personal injury and a myriad of other claims. Wyo. Stat. Ann. § 1-3-105.

[¶ 19] We note at the outset, that the term "accrues" does not appear in Wyo. Stat. Ann. § 1-3-107. The omission of that term is potentially significant. Wyo. Stat. Ann. § 1-3-102 provides: "Civil actions can only be commenced within the periods prescribed in this chapter, after the cause of action accrues, but where a different limitation is prescribed by statute, that shall govern." It appears from a plain reading of Wyo. Stat. Ann. § 1-3-107 that the time for filing suit is governed by the date when the "act, error or omission" occurs, rather than the date when the cause of action accrues. The result in this case, however, does not change if the limitation period begins on the date when the cause of action accrues.[3]

[¶ 20] A cause of action accrues for statute of limitation purposes when all elements of the cause of action are present, including damages. *McCreary v. Weast*, 971 P.2d 974, 979 (Wyo.1999). As it relates to the damage element of the cause of action, the limitation period begins when the injured party knows or reasonably ought to know that some damage has resulted from the

wrongful act. *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 337 (Wyo.1986).

As a general rule, where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not required that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action, and is not legally severable from its consequences.

*Duke*, 589 P.2d at 343.

[¶ 21] Unquestionably, Lucky Gate knew on May 5, 2005, at the latest, that it had incurred damages as a result of Baker's failure to perform. Its attorney, on that date, demanded a refund of the $1,326.40 that Lucky Gate had previously paid Baker. Unquestionably, as of that date, Lucky Gate had discovered the wrongful conduct and was aware that it had been damaged. The statute of limitations had "attached" and the cause of action had accrued on or before that date. The limitation period began by May 5, 2005 and was not extended because other damages had not yet occurred. *Id.*

[¶ 22] The fact that Baker reimbursed Lucky Gate for the $1,326.40 does not impact our analysis. Neither does the fact that Lucky Gate did not claim the $1,326.40 as damages in its complaint. All of Lucky Gate's damage claims are founded upon the breach of contract that occurred in May 2004. Future damages arising from that breach do not create new causes of action. *Id.* "To allow successive actions as additional damages arise would nullify the statutes of limitation and defeat their very purpose." *Id.* at 344.

---

3. Both parties in this appeal use the date when the cause of action "accrued" as the date the limitation period began. Neither party analyzes the facts in terms of the "act, error or omission" language contained in the statute. We have, on occasion, used the date when the cause of action has "accrued" to determine whether the litigation was timely commenced under Wyo. Stat. Ann. § 1-3-107. *See Ballinger v. Thompson,*

2005 WY 101, ¶¶ 24-26, 118 P.3d 429, 437 (Wyo. 2005); *Murphy v. Housel & Housel*, 955 P.2d 880, 883 (Wyo.1998); *Hiltz v. Robert W. Horn, P.C.*, 910 P.2d 566, 570 (Wyo.1996). Because the result is the same under both approaches we need not determine here whether the limitation period begins on the date of the "act, error or omission" or when the cause of action "accrued."

[¶ 23] In summary, whether the statute of limitations set forth in Wyo. Stat. Ann. § 1–3–107 begins to run on the date of the "act, error or omission" or on the date the cause of action "accrued," the lawsuit was untimely. The district court properly found that, as a matter of law, Lucky Gate's complaint was barred by the statute of limitations.

### Equitable Estoppel

[¶ 24] Lucky Gate next claims that equitable estoppel prevents Baker from raising the statute of limitations as a defense. The doctrine of equitable estoppel precludes the defendant from asserting the statute of limitations in appropriate circumstances. "The elements of an equitable estoppel claim are 1) a delay in filing an action that is induced by the defendant; 2) the defendant misled the plaintiff; and 3) the plaintiff must have acted on the misinformation in good faith to the extent that he failed to pursue his action in a timely manner." *Ballinger v. Thompson*, 2005 WY 101, ¶ 22, 118 P.3d 429, 436 (Wyo.2005). We conclude that the undisputed facts presented here do not satisfy the elements of equitable estoppel.

[¶ 25] In determining whether equitable estoppel applies, our focus is not on the date when the cause of action accrued or the date of the act, error or omission giving rise to the lawsuit. Rather, Lucky Gate must establish that its delay in filing suit was induced by Baker. We agree with the district court that Lucky Gate failed, as a matter of law, to satisfy that burden. Although Baker may have misled Lucky Gate regarding performance of the contract, there is no evidence that Baker took any action between June 2005 and May 2007 that induced Lucky Gate to delay initiating this litigation. The district court properly granted summary judgment to Baker on Lucky Gate's claim of equitable estoppel.

[¶ 26] Affirmed.