# THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 78

APRIL TERM, A.D. 2023

August 10, 2023

GARRET and SHELLY FALKENBURG,

Appellants
(Plaintiffs),

v.

S-22-0313

LARAMIE INVESTMENT COMPANY, INC.
and BRAD M. JACKSON,

Appellees
(Defendants).

*Appeal from the District Court of Converse County*
*The Honorable Patrick W. Korell, Judge*

*Representing Appellants:*
    Stephen R. Winship, Winship & Winship, P.C., Casper, Wyoming.

*Representing Appellees:*
    Anna Reeves Olson, Long Reimer Winegar, LLP, Casper, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, and FENN, JJ., and Eames, DJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**EAMES, District Judge.**

[¶1]    Garret and Shelly Falkenburg contracted with Laramie Investment Company, Inc. and its owner and President, Brad Jackson, to obtain an insurance policy for their ranch and surrounding outbuildings.  After a tornado destroyed their home and Quonset hut, the Falkenburgs discovered that the insurance policy did not cover the Quonset hut or its contents.  On the two-year anniversary of the tornado, the Falkenburgs sued Laramie Investment Company and Mr. Jackson for breach of contract, negligence, and "reasonable expectations."  The district court concluded that the statute of limitations had expired and granted summary judgment to Laramie Investment Company and Mr. Jackson.  The Falkenburgs appealed and we affirm.

## ISSUES

[¶2]    The parties raise several issues, which we rephase and reorganize as follows:

> I.      Is Mr. Jackson a "professional" under WYO. STAT. ANN. § 1-3-107?
>
> II.     When did the statute of limitations begin to run?
>
> III.    Are there genuine issues of material fact regarding the statute of limitations that precluded summary judgment in this case?
>
> IV.     Does the continuous care doctrine apply in this case?

## FACTS

[¶3]    On June 1, 2018, the Falkenburgs contacted Mr. Jackson and Laramie Investment Company for assistance purchasing an insurance policy for their Douglas ranch.  The Falkenburgs wanted a policy that covered their land, their house and its contents, and several outbuildings on the property, including their Quonset hut.[1]  Mr. Jackson obtained a policy offer from Nationwide AgriBusiness Company (Nationwide) and sent the Falkenburgs an email with a summary of the draft policy.  The synopsis of the policy read:

> $1,000,000/$2,000,000 general – premises liability limit (for your 406 acres, and the 9000 lease acres)

---

[1] A Quonset hut is a type of metal shelter with a curved roof.  *See Scherer, II v. Laramie Regional Airport Bd.*, 2010 WY 105, ¶ 4 n.1, 236 P.3d 996, 998 n.1 (Wyo. 2010); Encyclopædia Britannica, The Britannica Dictionary: Quonset, Britannica.com/dictionary/Quonset (last visited June 14, 2023).

1

Additional Insured Endorsement (for the leased land – for the landowner to be listed & notified)

Dwelling/Home insured at $411,460
Personal property insured at $288,022 (70% of dwelling limit)
Other Structures on Property insured at $41,146 (10% of dwelling limit)
Dwelling and personal property is insured as replacement cost.
Deductible is $1,000

Total annual premium is $4148.00 for the year and can be issued full pay or with payments.

On July 10, Mr. Jackson emailed the Falkenburgs and informed them that Nationwide had issued the policy and it was effective as of July 5, 2018.

[¶4]   On July 28, the Falkenburgs' home and the Quonset hut were destroyed by a tornado.  The Falkenburgs filed a claim with Nationwide.  Nationwide denied coverage for the Quonset hut and its contents because the policy did not cover them.  On July 28, 2020, the Falkenburgs filed a complaint against Laramie Investment Company and Mr. Jackson for breach of contract, negligence, and a "reasonable expectations" claim.[2]  The defendants filed a motion for summary judgment, which the district court granted.  The court determined that Mr. Jackson, as a licensed insurance agent, was a "professional" for the purposes of WYO. STAT. ANN. § 1-3-107.  The Falkenburgs' suit was therefore subject to a two-year statute of limitations.  The court concluded that the statute of limitations began to run from the date the policy went into effect, July 5, 2018.[3]  The court also rejected the Falkenburgs' argument that the "continuous [care] doctrine" applied to toll the statute of limitations.  The Falkenburgs filed a Rule 59 motion to alter or amend the order granting the defendants summary judgment, which the court denied.  The Falkenburgs appealed the district court's order granting summary judgment and its order denying their Rule 59 motion.

## STANDARD OF REVIEW

[¶5]   Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a).  "We review a district court's ruling on summary judgment de novo." *Wilcox v. Sec. State Bank*, 2023 WY 2, ¶ 26, 523 P.3d 277, 284 (Wyo. 2023) (quoting

---

[2] For a discussion of the "reasonable expectations" doctrine, see *Harper v. Fidelity and Guar. Life Ins. Co.*, 2010 WY 89, ¶¶ 36–38, 234 P.3d 1211, 1222 (Wyo. 2010).
[3] Both the district court and the Falkenburgs appear to have confused the policy's effective date and the day Mr. Jackson communicated the policy to the Falkenburgs.  The policy went into effect on July 5, 2018, and Mr. Jackson emailed the policy to the Falkenburgs on July 10, 2018.

*Statzer v. Statzer*, 2022 WY 117, ¶ 10, 517 P.3d 574, 578–79 (Wyo. 2022)). We give no deference to the district court's ruling, evaluate the same materials, and apply the same standards as the district court. *Id.*

[¶6]   "The record is assessed from the vantage point most favorable to the party opposing the motion, and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record." *Id.* (quoting *Statzer*, ¶ 10, 517 P.3d at 579). A material fact is one that would establish or refute an essential element of the cause of action or defense asserted by the parties. *Id.* The burdens of the respective parties in supporting or opposing summary judgment are well established:

> The party moving for summary judgment bears the burden of establishing a prima facie case and showing there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Once that burden is met, the opposing party is obligated to respond with materials beyond the pleadings to show a genuine issue of material fact. When the moving party does not have the ultimate burden of persuasion, it establishes a prima facie case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim.

*Id.* (quoting *Statzer*, ¶ 11, 517 P.3d at 579).

## DISCUSSION

### I.   Mr. Jackson is a "professional" under WYO. STAT. ANN. § 1-3-107.

[¶7]   The district court determined that Mr. Jackson was a "professional" within the meaning of WYO. STAT. ANN. § 1-3-107. Under § 1-3-107, "[a] cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within . . . two (2) years of the date of the alleged act, error or omission[.]" WYO. STAT. ANN. § 1-3-107(a)(i). The Falkenburgs contend that their claim is governed by the four-year statute of limitations applicable to ordinary negligence actions because Mr. Jackson is not a "professional." They rely on the definition of "professional" found in the Wyoming Professional Review Panel Act, WYO. STAT. ANN. § 9-2-1803(a)(iii), which defines a "professional" as a person having at least one year of specialized post-secondary education. WYO. STAT. ANN. § 9-2-1803(a)(iii). The Falkenburgs conclude that, because insurance agents are not required to have any specific post-secondary education, they are not professionals, and their actions are not subject to the two-year statute of limitations in § 1-3-107.

3

[¶8]     We have applied § 1-3-107 to a variety of occupations. *See Foltz v. Oblasser*, 2020 WY 51, ¶ 12, 461 P.3d 417, 419 (Wyo. 2020) (attorneys); *St. John v. Wagner*, 2013 WY 69, ¶ 9, 302 P.3d 906, 908 (Wyo. 2013) (dentists); *Lucky Gate Ranch, LLC v. Baker & Associates, Inc.*, 2009 WY 69, ¶ 11, 208 P.3d 57, 62 (Wyo. 2009) (engineers); *Prokop v. Hockhalter*, 2006 WY 75, ¶ 15, 137 P.3d 131, 136 (Wyo. 2006) (licensed outfitters and professional guides); *Rawlinson v. Greer*, 2003 WY 28, ¶ 22, 64 P.3d 120, 125 (Wyo. 2003) (realtors); *Bredthauer v. Christian, Spring, Seilbach and Associates*, 824 P.2d 560, 562 (Wyo. 1992) (land surveyors); *Mills v. Garlow*, 768 P.2d 554, 555 (Wyo. 1989) (accountants).  The reasoning behind our application of § 1-3-107 varies, but this Court has not required a one-year post-secondary education to qualify as a professional under § 1-3-107.

[¶9]     The Falkenburgs' reliance on § 9-2-1803 is not a novel position.  In *Walters v. Grand Teton Crest Outfitters, Inc.*, the federal district court for Wyoming relied on § 9-2-1803 to conclude that "a licensed outfitter is not a professional" under § 1-3-107. *Prokop*, ¶ 7–8, 137 P.3d at 133 (discussing *Walters v. Grand Teton Crest Outfitters, Inc.*, 804 F.Supp. 1442 (D. Wyo. 1992)).  In *Prokop*, however, we rejected using § 9-2-1803(a)(iii) when setting out the framework for determining whether a person is a licensed or certified professional within the meaning of § 1-3-107.  *Prokop*, ¶ 9, 137 P.3d at 133-34*; see also Rawlinson*, ¶ 14, 64 P.3d at 123 (holding that realtors qualified as professionals without relying on § 9-2-1803(a)(iii)).  Instead, when addressing § 1-3-107, we have looked to the plain language of the statute, state regulation of the occupation at issue, whether there are licensure or certification requirements for the occupation, and whether the "act or service . . . involve[es] specialized knowledge[.]" *See St. John*, ¶ 9, 302 P.3d at 908; *Rawlinson*, ¶¶ 17–22, 64 P.3d at 124-25; *Prokop*, ¶¶ 10–11, 137 P.3d at 134-35.

[¶10] Mr. Jackson qualifies as a "professional" under § 1-3-107. For one thing, the insurance industry is subject to state regulation and licensure requirements.  An insurance producer is "a person **required to be licensed** under the laws of this state to sell, solicit or negotiate insurance, including, but not limited to, agents and brokers." WYO. STAT. ANN. § 26-1-102(a)(xxxv) (emphasis added).  To obtain a license to produce insurance, applicants must be at least eighteen years of age, demonstrate they have not committed an act resulting in the denial, suspension, or revocation of a license, successfully pass specific examinations, pay license fees, and provide the Commissioner with fingerprints and other necessary information to complete a criminal background check. WYO. STAT. ANN. § 26-9-206.  Maintaining the license requires continuing education, including "ethics" training. WYO. STAT. ANN. § 26-9-231(a).  Like realtors, insurance agents who violate the insurance code are subject to sanctions. WYO. STAT. ANN. §§ 26-2-112(b), 33-28-111(a).

[¶11] Moreover, the Falkenburgs' expert witness opined that insurance agents are "professionals" and referred to selling insurance as a "profession."  Finally, the Falkenburgs relied on Mr. Jackson to procure the appropriate insurance for their situation

by virtue of his profession. This Court concludes that the two-year statute of limitations applies to the Falkenburgs' claims against Mr. Jackson. [4]

## II. The statute of limitations began running when the insurance policy was issued.

[¶12]   Having determined that § 1-3-107 applies to Mr. Jackson, we now turn to when the two-year statute of limitations began to run. The Falkenburgs argue that the district court erred when it found the statute of limitations commenced the day the insurance policy became effective on July 5, 2018. The Falkenburgs assert that Mr. Jackson had a continuing duty to verify that the policy was correct up until the tornado struck. They contend the statute of limitations began to run on July 28, 2018, when Mr. Jackson's error could no longer be corrected.

[¶13]   The language of § 1-3-107 "applies to causes of action arising from the rendering of services." *Prokop*, ¶ 13, 137 P.3d at 135. "[T]he time for filing suit is governed by the date when the 'act, error or omission' occurs, **rather than the date when the cause of action accrues**." *Lucky Gate*, ¶ 19, 208 P.3d at 65 (emphasis added). Under § 1-3-107, "the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action[] and is not legally severable from its consequences." *Pioneer Homestead Apartments III v. Sargent Engineers, Inc.*, 2018 WY 80, ¶ 36, 421 P.3d 1074, 1083 (Wyo. 2018) (quoting *Lucky Gate*, ¶ 20, 208 P.3d at 65).

[¶14]   The Falkenburgs' case is premised upon Mr. Jackson's failure to satisfy their request for an insurance policy that covered their Quonset hut and its contents. *See Lucky Gate*, ¶ 15, 208 P.3d at 64 ("Lucky Gate's cause of action is premised upon Baker's failure to fulfill its contractual obligations."). This distinct professional action ended on July 5, 2018, when the policy went into effect. After forwarding the policy to the Falkenburgs, Mr. Jackson did not do any more work regarding their insurance policy until he emailed them a copy following the tornado.

[¶15]   This Court's holding in *Adelizzi v. Stratton* is instructive here. In *Adelizzi*, the appellants hired the appellee to act as their agent in the purchase of a home. 2010 WY 148,

---

[4] The Falkenburgs ask this Court to apply our decision regarding Mr. Jackson's status as a "professional" under § 1-3-107 only prospectively. We decline. *See, e.g.*, *Mills v. State*, 2020 WY 14, ¶ 15, 458 P.3d 1, 7 (Wyo. 2020) ("For a decision to warrant only prospective application, the decision 'must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.'"); *see also Adkins v. Sky Blue, Inc.*, 701 P.2d 549, 556 (Wyo. 1985) ("The test [for whether a decision should only be applied prospectively] is (1) the purpose to be served by the new standards; (2) the extent of reliance on the old standards; and (3) the effect on the administration of justice of a retrospective application of the new standards."). The professional status of Mr. Jackson was clearly foreshadowed by this Court's prior cases applying § 1-3-107.

5

¶ 3, 243 P.3d 563, 564 (Wyo. 2010). A large flood damaged the Adelizzi's property more than a year after closing on their new home. *Id.* at ¶¶ 3–6, 243 P.3d at 564. They filed a complaint against the appellee less than two years after the flood, but more than two years after they had closed on the house. *Id.* at ¶ 7, 243 P.3d at 564–565. This Court held their claim was barred by § 1-3-107 because it was filed more than two years after closing, "the last day that [appellee] performed professional services for the [appellants] under their agreement." *Id.* at ¶ 13, 243 P.3d at 566.

[¶16] The last day Mr. Jackson can reasonably be said to have performed professional services for the Falkenburgs was on July 5, 2018, when the policy went into effect. While Mr. Jackson communicated with the Falkenburgs after the date of the relevant "act, error or omission," this did not toll the statute of limitations for the purposes of § 1-3-107 because the relevant act was the failure to obtain an insurance policy that included coverage for the Quonset hut and its contents. The statute of limitations began to run on July 5, 2018, when the act occurred, not on July 28 when the injury accrued. *Adelizzi*, ¶ 13, 243 P.3d at 566 ("Under no theory of statutory construction are we free to interpret the words 'within two years of the date of the alleged act, error or omission' to mean 'within two years of the date when the cause of action accrues.'").

### III.  *There are no genuine issues of material fact regarding the statute of limitations that precluded summary judgment.*

[¶17] The Falkenburgs also assert that a genuine issue of material fact exists as to when the two-year limitation period began. A grant of summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a). "When relevant facts are undisputed, we have stated that the issue of whether a statute of limitations applies is resolvable as a matter of law. We have also held, however, that when facts are in dispute, the applicability of a statute of limitations involves a mixed question of law and fact." *Irene v. Seneca Ins. Co., Inc.*, 2014 WY 145, ¶ 22, 337 P.3d 483, 491 (Wyo. 2014) (internal citations omitted). We conclude that summary judgment was appropriate in this case.

[¶18] The Falkenburgs' argument that a genuine issue of material fact precluded summary judgment simply repeats what we have previously stated. The policy went into effect on July 5, 2018, and Mr. Jackson emailed the policy to the Falkenburgs on July 10, 2018. Section 1-3-107 is unambiguous in its mandate that the statute of limitations begins to run on the date of the relevant "act, error or omission," not when the cause of action accrued. Thus, the Falkenburgs' complaint, filed two years from the date of the tornado, was time-barred, and the district court correctly granted the appellees' motion for summary judgment.

### V.  *The continuous care doctrine does not apply to this case.*

6

[¶19] Finally, we address the Falkenburgs' contention that this Court should extend Wyoming's "continuous care doctrine" to Mr. Jackson's actions in this case. They argue that Mr. Jackson had the ability and duty to correct the policy omission up until the date of the tornado and continued to act as their agent after the tornado, providing "continuous care," and tolling the statute of limitations. We disagree.

[¶20] We have applied the "continuous care" or "continuous treatment" rule in medical cases. *See, e.g.*, *Nobles v. Mem'l Hosp. of Laramie Cnty*, 2013 WY 66, ¶ 18, 301 P.3d 517, 522 (Wyo. 2013). We justified applying this doctrine to medical malpractice cases because "where the defendant physician has provided a continuing course of care for the same or related complaints, the cessation of treatment completes the 'act' which starts the running of the statutory period for filing suit." *Id.* (quoting *Metzger v. Kalke*, 709 P.2d 414, 417 (Wyo. 1985)).

[¶21] We have refused to apply the continuous care doctrine to legal malpractice actions, and we similarly decline to extend the doctrine to this case. *Ballinger v. Thompson*, 2005 WY 101, ¶ 27, 118 P.3d 429, 437 (Wyo. 2005). As previously discussed, § 1-3-107 is explicit: the statute of limitations begins when the "act, error, or omission" occurs. WYO. STAT. ANN. § 1-3-107. Like our rejection of the doctrine in legal malpractice cases, we have no statutory authority that would override the express language of § 1-3-107 in relation to insurance sales.

[¶22] "The application of [the continuous care] doctrine should only be applied where the 'professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship.'" *Ballinger*, ¶ 31, 118 P.3d at 438 (quoting *Hiltz v. Robert W. Horn, P.C.*, 910 P.2d 566, 571 (Wyo. 1996)). The Falkenburgs argue that this Court impliedly extended the continuous care doctrine to realtors in *Adelizzi* when we held that the statute of limitations began to run on the last day that the appellee had performed professional services for the appellants. *Adelizzi*, ¶ 13, 243 P.3d at 566. The Falkenburgs interpretation is incorrect. The *Adelizzi* appellants argued that the appellee had "negligently and intentionally failed to disclose" that the house purchased by the appellants had a history of flooding. *Id.* at ¶ 7, 243 P.3d at 565. The date of the omission would therefore have to be on or before the last day the appellee failed to disclose the flood history of the house. In *Adelizzi*, this date was when the appellants closed on the house, which would be, in other words, the last day appellee performed professional services. *Id* at ¶ 8, 243 P.3d at 565. This is not an extension of the continuing care doctrine as the Falkenburgs argue, but rather a straightforward application of § 1-3-107. *Id.* at ¶ 13, 243 P.3d at 566.

[¶23] As we stated in *Adelizzi*, "[u]nder no theory of statutory construction are we free to interpret the words 'within two years of the date of the alleged act, error or omission' to mean 'within two years of the date when the cause of action accrues.'" *Id.* at ¶ 13, 243 P.3d at 566. In this case, any relationship or communication between Mr. Jackson and the

Falkenburgs following the insurance policy's effective date did not toll the statute of limitations. Even if we agreed that the continuous care doctrine applied, the "care" in this case would stop being continuous on the day the insurance policy went into effect—July 5, 2018. At that point, the Falkenburgs and Mr. Jackson had, at most, a "general professional relationship." *See Ballinger*, ¶ 31, 118 P.3d at 438 (holding that the continuation of a general professional relationship does not invoke the continuous care doctrine). We hold that the continuous care doctrine does not apply to the facts of this case. Mr. Jackson's relationship or interaction with the Falkenburgs beyond the policy's effective date did not affect the statute of limitations.

## **CONCLUSION**

[¶24]   For the reasons discussed above, Mr. Jackson was a professional under WYO. STAT. ANN. § 1-3-107, the two-year statute of limitations expired before the Falkenburgs filed their complaint, the district court correctly granted summary judgment to Mr. Jackson and Laramie Investment Company, and we decline to apply the "continuous care doctrine" to the facts of this case.

[¶25]   Affirmed.