LYNN SWASSING, APPELLANT, v. C. J. BAUM ET AL., APPELLEES.
RONALD W. SWASSING, APPELLANT, v. C. J. BAUM ET AL., APPELLEES.
240 N. W. 2d 24

Filed March 25, 1976. Nos. 40215, 40216.

David J. Johnson, Ronald H. Stave, and Emil F. Sodoro, for appellants.

John R. Douglas of Cassem, Tierney, Adams & Gotsch and Frederick M. Deutsch, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This case involves appeals from the sustaining of demurrers and the dismissal by the District Court of the plaintiffs' petitions. We affirm the judgment of the District Court.

On August 6, 1974, petitions were filed by the plaintiffs in the District Court for Douglas County, Nebraska. The defendant, Dr. Baum, and his employee, Mrs. Van De Vegt, were named as codefendants. The petitions alleged the following facts. In June or July 1966, plaintiff Lynn Swassing came to Dr. Baum for testing and examination to determine if she was pregnant. Dr. Baum ordered Mrs. Van De Vegt to do a blood typing test on Mrs. Swassing. This was done. Dr. Baum advised Mrs. Swassing that she had type A-positive blood.

Previously, Mrs. Swassing did not know her blood type. It was determined that she was pregnant and in October 1966 with Dr. Baum attending, a normal, healthy, female child was born to her.

In May or June 1968, Mrs. Swassing returned to Dr. Baum and again he determined that she was pregnant. No blood typing test was performed at this time. In January 1969, with Dr. Baum attending, Mrs. Swassing gave birth to her second child, this time a normal, healthy male child.

In October or November 1970, Mrs. Swassing again presented herself to Dr. Baum for examination. This time Dr. Baum ordered a new blood typing test performed. The results from this test showed that Mrs. Swassing had AB-negative blood, and not A-positive blood as the 1966 test had indicated. A second test in December 1970, reaffirmed that Mrs. Swassing had AB-negative blood. It was then determined that Mr. Swassing had A-positive blood, and that the combination of the two types created an RH factor in the blood of the child Mrs. Swassing was then pregnant with. That child, Richard Swassing, was born in March 1971 with serious and permanent injuries. It was alleged that had not Mrs. Swassing's blood been erroneously typed in 1966 by Dr. Baum's employee, Mrs. Van De Vegt, the injuries to Richard Swassing could have been averted. It was further alleged that as a direct and proximate result of that negligence it is now impossible for Mrs. Swassing to bear normal, healthy children in the future. Damages were sought.

The plaintiffs sought to recover from Dr. Baum on the theory that he is liable for the negligent acts of Mrs. Van De Vegt, as her employer, under the doctrine of respondeat superior. Dr. Baum demurred to the plaintiffs' petitions on the grounds that they alleged an act of professional negligence which had occurred in 1966, and which was discovered in October or November 1970, or March 1971, when Richard Swassing was born, at the

latest; that plaintiffs' actions were not filed until August 1974, and consequently the causes of action were barred by the Nebraska statute of limitations governing actions for professional negligence. § 25-222, R. S. Supp., 1974. Dr. Baum further demurred on the ground that insofar as plaintiffs sought to recover damages for mental anguish, their petitions failed to state a cause of action. The District Court, after a hearing on the motions, held that section 25-222, R. S. Supp., 1974, applied to the plaintiffs' causes of action and that they were barred. The demurrers were sustained and plaintiffs' petitions were dismissed with prejudice. Both plaintiffs have appealed and the cases have been consolidated here.

Section 25-222, R. S. Supp., 1974, provides as follows: "Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; Provided, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; and provided further, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action."

It is apparent that a direct action against Dr. Baum could not be maintained by plaintiffs. Therefore, instead of proceeding directly against Dr. Baum for professional negligence, the plaintiffs attempt to reach him indirectly with a respondeat superior theory, hoping

thus to avoid the statutory bar of section 25-222, R. S. Supp., 1974. The plaintiffs' theory is as follows: Mrs. Van De Vegt was an employee and agent of Dr. Baum. Her alleged negligence in making an erroneous blood type of Mrs. Swassing, it is contended, was not professional negligence, but ordinary negligence, governed by a 4-year statute of limitations. Their actions, based upon this negligence, were therefore timely brought, the actions being filed in August 1974, and the negligence being discovered in October 1970 at the earliest.

Boiled down, the question presented is whether Mrs. Van De Vegt, at the time of the alleged negligence, was performing professional services. If she was, then any negligence occurring during such performance would constitute professional negligence. If this be the case, the plaintiffs' causes of action against Mrs. Van De Vegt would be barred by the professional negligence statute of limitations, section 25-222, R. S. Supp., 1974, and likewise their causes of action against Dr. Baum on a respondeat superior theory would fail.

The plaintiffs contend that a question of fact is presented as to whether Mrs. Van De Vegt was engaging in professional services at the time and under the circumstances alleged in their petitions. But the cases are here on demurrers, and for that purpose the facts as alleged by the plaintiffs must be taken to be undisputed and, therefore, the question presented is whether these undisputed facts, if proved, constitute "professional services" under the applicable rule of law. This, of course, presents a question of law to be determined by the court. As we shall see in the following discussion in this opinion, the facts alleged in the petitions constitute, as a matter of law, a rendition of professional services, because the performance of the blood test was an essential and integral part of the rendition of professional services by Dr. Baum to Mrs. Swassing.

The plaintiffs also contend that evidence on Mrs. Van De Vegt's status at the time in question, e.g., registered

nurse, medical technician, et cetera, must be presented for a proper determination of whether she was performing professional services. In Marx v. Hartford Accident & Indemnity Co., 183 Neb. 12, 157 N. W. 2d 870 (1968), this court wrote: "A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. * * * In determining whether a particular act is of a professional nature or a 'professional service' *we must look not to the title or character of the party performing the act, but to the act itself.*" (Emphasis supplied.) It is thus irrelevant, in determining whether Mrs. Van De Vegt was performing a professional service at the time of the alleged negligence, to show what the title of her position with Dr. Baum was, or what her status was denominated. The court must look to the nature of the act itself and the circumstances under which it was performed.

The 1966 blood typing test on Mrs. Swassing, was performed by Mrs. Van De Vegt at the specific direction of Dr. Baum. Mrs. Van De Vegt was an employee within Dr. Baum's professional unit. The results of the blood test provided Dr. Baum with vital and necessary information in his examination and diagnosis of Mrs. Swassing. The performance of the blood test was an essential and integral part of the rendition of professional services by Dr. Baum to Mrs. Swassing. When Mrs. Swassing presented herself to Dr. Baum in 1966 for examination and diagnosis, a professional relationship, in this case, doctor-patient, was created. This professional relationship was the stimulus for the performance of the blood typing test on Mrs. Swassing, and the test and the interpretation of its results all occurred during the course of the professional relationship.

In Stacey v. Pantano, 177 Neb. 694, 131 N. W. 2d 163 (1964), the plaintiff attempted to separate the actions

of a physician in fraudulently concealing the cause and nature of a patients condition from a claim for damages for earlier negligence in diagnosis and treatment. All the statements and acts complained of occurred during the physician-patient relationship. The plaintiff in that case sued on a theory of fraud, fraud being governed by a 4-year statute of limitations. The defendant physician maintained that the 2-year statute of limitations for malpractice, section 25-208, R. R. S. 1943, applied and that the action was consequently barred. The District Court dismissed the action and this court affirmed. We stated: "We do not think that the advise and the statements of a physician as to the nature and cause of a patient's condition, as a part of the necessities of treating and consulting with the patients, are separable. *They are essentials to the performance of the physician's whole duty to the patient.* We do not think that the Legislature, when it enacted the special limitation statute of 2 years on malpractice intended to separate certain portions of the whole physician-patient relationship and apply a confusing standard of 2 and 4 years to different portions of that relationship, or to require the courts to make such a nebulous and difficult fact separation and determination." (Emphasis supplied.)

Similarly, we do not believe that the Legislature in adopting the special statute of limitations for professional negligence, section 25-222, R. S. Supp., 1974, intended that the various aspects of the whole professional relationship should be separated and a 2-year statute of limitations be applicable to those acts performed directly by the head of the professional unit, and a 4-year statute of limitations be applicable to acts performed, during the course of the professional relationship, by employees of the professional unit upon specific direction of the professional master to be used in and constituting a necessary, essential, and integral part in the rendition of professional services to a client, for

which the head of the professional unit is liable under the doctrine of respondeat superior.

Actions based upon professional negligence often turn upon minute and precise factual distinctions. The purpose of section 25-222, R. S. Supp., 1974, was to insure that actions based upon professional negligence would be brought shortly after the alleged negligence occurred or was discovered so that the professional could have a fair chance to defend on the merits and not find his defenses eroded by the lapse of time.

We hold, therefore, that at the time of the allegedly negligent blood typing, Mrs. Van De Vegt was performing professional services and any negligence on her part constituted professional negligence within the meaning of section 25-222, R. S. Supp., 1974. The special statute of limitations controls over a general one "* * * because the special statute is the one that expresses the legislative will providing the acts complained of come within the meaning therein expressed." Stacey v. Pantano, *supra*. Since the actions against Mrs. Van De Vegt are barred, the causes of action against Dr. Baum based on the theory of respondeat superior, are also barred. The District Court was correct in sustaining the demurrers of defendant Baum and dismissing the plaintiffs' petitions.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.