Marion VIGUE et al.

v.

JOHN E. FOGARTY MEMORIAL
HOSPITAL and Jane Doe.

No. 81–392–Appeal.

Supreme Court of Rhode Island.

July 24, 1984.

William G. Savastano, North Smithfield, for plaintiffs.

Dennis J. McCarten, Hanson, Curran & Parks, Providence, for defendants.

OPINION

MURRAY, Justice.

The plaintiffs, Marion and Philip Vigue, appeal from a dismissal order entered against them in the Superior Court and in favor of the defendants, John E. Fogarty Memorial Hospital (hereinafter the "hospital") and an unknown nurse.

On July 28, 1980, plaintiffs filed a complaint alleging that on or about July 29, 1977, the hospital and an unknown nurse employed by the hospital breached their duty of care to Marion Vigue (hereinafter

Mrs. Vigue). Mrs. Vigue was then an inpatient at the hospital. Specifically, plaintiffs allege the following. On July 29, 1977, Mrs. Vigue was awakened by a nurse employed by the hospital. The nurse instructed Mrs. Vigue to produce a urine sample. The nurse left Mrs. Vigue alone to proceed to the bathroom when said nurse "knew or should have known" that Mrs. Vigue was unable to do so without assistance. Mrs. Vigue slipped and fell at this time and sustained both physical and mental injuries. These injuries form the basis of plaintiffs' claim for damages.

On April 1, 1981, the hospital filed a motion for summary judgment on the ground that plaintiffs' claim was barred by G.L.1956 (1969 Reenactment) § 9–1–14.1.[1] At the hearing on the motion for summary judgment, plaintiffs argued that their action was based upon a theory of common-law negligence and not upon a statutory claim for medical malpractice that was governed by § 9–1–14.1. Thus, plaintiffs argued that their claim was controlled by § 9–1–14, as amended by P.L.1976, ch. 188, § 1, which provides a three-year statute of limitations for personal-injury actions. After hearing the matter, the trial justice treated the hospital's motion for summary judgment as a motion to dismiss for failure to bring suit within the two-year period and dismissed plaintiffs' action with prejudice.[2] The plaintiffs appeal this ruling.

In considering a motion to dismiss for failure to state a claim, we view the allegations of the complaint as true and in the light most favorable to plaintiffs. Unless it is clear beyond a reasonable doubt that a plaintiff will be unable to prove his right to relief and it appears to a certainty that he will not be entitled to relief under

any set of circumstances, his complaint shall not be dismissed. *Rosen v. Restrepo*, 119 R.I. 382, 401–02, 380 A.2d 960, 962 (1977); *Bragg v. Warwick Shoppers World, Inc.*, 102 R.I. 8, 12, 227 A.2d 582, 584 (1967).

Applying this standard to the case at bar, we note that the sole issue presented in this appeal is which statute of limitations should apply—the two-year period provided for medical-malpractice actions or the three-year period specified for negligence actions. If two years is the appropriate limitations period for this action, it is clear that plaintiffs are not entitled to relief and that the trial justice's dismissal of their action was proper—no conceivable set of facts could exist to support an award in their favor if their action had not been filed within the statutory period.

Before proceeding to the merits of this appeal, we note a substantial change between the legal environment faced by the trial justice at the time of his ruling and that confronting us today. In dismissing plaintiffs' complaint, the trial justice based his decision on two different grounds, one of which no longer has the force of law. Specifically, the trial justice relied upon the language of G.L.1956 (1969 Reenactment) §§ 10–19–1 and 10–19–5, as enacted by P.L. 1981, ch. 187, § 2, as a basis for his dismissal. In his opinion, defendant Fogarty Memorial Hospital was a "health care provider" (§ 10–19–5) that was being sued in a "medical liability action" (§ 10–19–1). Since the date of his ruling, however, this court has invalidated as unconstitutional §§ 10–19–1 through 10–19–7 inclusive under equal-protection grounds. *See Boucher v. Sayeed*, R.I., 459 A.2d 87, 92–94 (1983). We are thus confronted with a case in which the apparent statutory foundation

---

**1.** At that time, G.L.1956 (1969 Reenactment) § 9–1–14.1 provided a two-year statute of limitations for medical-malpractice actions. Section 9–1–14.1 now provides a three-year statute of limitations for medical-malpractice actions. P.L.1981, ch. 101, § 2.

**2.** Although initially filed as a motion for summary judgment, the trial justice's order dated

June 26, 1981, entering judgment for the hospital treated the hospital's motion as one to dismiss. It is unclear from the record exactly why this particular procedure was followed, but it is not unlikely that it was employed by the trial justice in response to an objection filed by plaintiffs to an affidavit submitted by the hospital in support of its motion.

for the trial justice's ruling is no longer operative law. We shall therefore review the second, more general reason for the trial justice's ruling [3] independently of his statutory justification for dismissal in light of existing law. We necessarily focus our inquiry concerning defendants' liability solely upon the hospital since the identity of the employee nurse is unknown.

In determining whether the hospital's conduct on July 29, 1977, constituted medical malpractice under § 9–1–14.1, we initially look to related sections of the General Laws for guidance. General Laws 1956 (1976 Reenactment) § 5–37.1–1(f), as amended by P.L. 1978, ch. 149, § 1, defines malpractice as

> "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a licensed physician, hospital, clinic, health maintenance organization or professional service corporation providing health care services and organized under chapter 5.1 of title 7, to a patient."

A plain reading of this provision reveals that tortious conduct based upon professional services that were rendered or which should have been rendered by a hospital is included within the definition of malpractice. We would first note that plaintiffs' complaint clearly sounds in tort—it is an action against the hospital based upon the negligent supervision of Mrs. Vigue by its employee nurse. Additionally, it involves services that were rendered—administration of medication—or which should have been rendered—assisting Mrs. Vigue to the bathroom to obtain a urine sample—by the hospital through its employee nurse. The only close question concerning the applicability of § 5–37.1–1(f) is whether the services rendered by the hospital were professional in nature. Our review of the record

and relevant authorities convinces us that they were.

■ It has been stated that in determining whether a particular act involves the rendition of professional services, a court *"must look not to the title or character of the party performing the act, but to the act itself."* Swassing v. Baum, 195 Neb. 651, 656, 240 N.W.2d 24, 27 (1976) (quoting *Marx v. Hartford Accident & Indemnity Co.*, 183 Neb. 12, 157 N.W.2d 870 (1968)). The title of the individual performing the act is not relevant in this determination—it is "the nature of the act itself and the circumstances under which it [is] performed [that determine whether professional services are involved]." *Swassing v. Baum*, 195 Neb. at 656, 240 N.W.2d at 27. The Supreme Court of Nebraska further stated that in adopting a shorter statute of limitations for actions of professional negligence than the one provided for ordinary negligence, its legislature did not intend "that the various aspects of the whole professional relationship should be separated [for purposes of applying the statute of limitations]." *Id.* at 657, 240 N.W.2d at 28. If the acts complained of constituted a necessary, essential, and integral part in the rendition of professional services to the patient, they are subject to the shorter statute of limitations provided for actions of professional negligence. *See id.* at 657–68, 240 N.W.2d at 28.

■ Applying these rules to the case at bar, we note initially that the title of the hospital staff member who administered the medication to Mrs. Vigue and that of the unknown nurse who awakened her and requested a urine sample are both irrelevant in determining whether the hospital was engaged in the rendition of professional services. We recognize further that as long as the acts performed by the hospital

---

**3.** The second reason that the trial justice dismissed plaintiffs' complaint was based upon his own opinion that this case was a malpractice action. In his own words, the trial justice characterized the nature of plaintiffs' complaint in the following manner: "[A] rose by any other name is a rose, and it seems like this is a medical malpractice action * * * it seems quite clear that it is a complaint brought by a patient against the hospital for improper treatment in the hospital."

were various aspects of the ongoing medical treatment of Mrs. Vigue, the same statute of limitations should apply to all phases of her treatment. The crux of the matter becomes, therefore, whether the services performed by the hospital upon Mrs. Vigue were necessary for her treatment. The administration of medication to her and the subsequent request that she produce a urine sample are both activities that directly related to Mrs. Vigue's medical treatment. In this sense, they represented the rendition of services by a hospital to a patient, of sufficient medical import, that they should be considered an essential part of her treatment. Consistent with the principles espoused in *Swassing*, we conclude that the acts complained of by plaintiffs should be considered professional services for purposes of applying § 5–37.1–1(f).

We recognize that another statutory provision in this jurisdiction specifically defines the term "professional services" in a manner inconsistent with this holding. General Laws 1956 (1969 Reenactment) § 7–5.1–2 explicitly defines "professional services" as personal services rendered by a person authorized to practice in one of fourteen enumerated professions.[4] This section in no manner contemplates the rendition of professional services by an institution, including those rendered by the hospital.

The short response to the argument that the definition of professional services contained in § 7–5.1–2 governs our interpretation of § 5–37.1–1(f) is that § 7–5.1–2 relates strictly to individuals and not other health-service organizations that are subject to the definition of malpractice under § 5–37.1–1(f). To embrace this argument is to accept the proposition that only individuals and not hospitals can render professional medical services under § 5–37.1–1(f). Such an approach would render the terms "hospital, clinic, [and] health maintenance organization" nullities under § 5–37.1–1(f). This we will not do, given the prior holdings of this court. In cases in which "there is ambiguity or apparent inconsistency between statutory provisions which are in *pari materia* or which affect related subjects, the various provisions must be given meaning and effect and all made operative if it be reasonably possible * * *." *Nascimento v. Phillips Petroleum Co.*, 115 R.I. 395, 398, 346 A.2d 657, 659 (1975); *see also Merciol v. New England Telephone & Telegraph Co.*, 110 R.I. 149, 153, 290 A.2d 907, 910 (1972); *Davis v. Cranston Print Works Co.*, 86 R.I. 196, 198–99, 133 A.2d 784, 785 (1957).[5]

A second reason exists to support our conclusion that the definition of "professional services" found in § 7–5.1–2 does not apply to malpractice actions brought against a hospital by an injured patient. Chapter 5.1 of title 7 provides the rules of incorporation for professional-service firms

---

**4.** General Laws 1956 (1969 Reenactment) § 7–5.1–2, as amended by P.L.1981, ch. 245, § 1, provides the following definition of "professional services":

" 'Professional services' shall mean the rendering of personal services by a person authorized to practice as one (1) of the following professions as defined in the general laws: (1) physicians and surgeons; (2) dentists; (3) attorneys-at-law; (4) osteopaths; (5) professional engineers; (6) architects; (7) certified public accountants and licensed public accountants; (8) veterinarians; (9) chiropractors; (10) chiropodists; (11) registered nurses; (12) optometrists; (13) physical therapists; or (14) landscape architects."

**5.** My brothers' dissent, focusing upon the acts of the unknown nurse and the common-law defini-

tion of the term, "malpractice," essentially holds that an institution cannot be held liable for medical malpractice except through respondeat superior. The approach of the dissenting opinion is, however, fundamentally different from that employed by the majority. Our holding is not based upon the common-law definition of "malpractice," but rather upon the language of G.L.1956 (1976 Reenactment) § 5–37.1–1(f), as amended by P.L. 1978, ch. 149, § 1. Our conclusion that the Legislature did provide for institutional liability in enacting § 5–37.1–1(f) is also supported by other provisions of the General Laws. *See* G.L. 1956 (1969 Reenactment) §§ 9–19–30, 9–19–32, 9–19–33, and 9–19–34. These sections, relating to the admission of certain types of evidence in medical malpractice suits, all contemplate suits against hospitals for medical malpractice.

in Rhode Island; it has nothing to do with actions for medical malpractice brought against any class of defendants. Additionally, the definition of "professional services" contained in § 7–5.1–2 is limited by its express terms to chapter 5.1. For all these reasons, we consider it unwise to adopt a rule that would extend the applicability of the definition of professional services contained in § 7–5.1–2 to malpractice actions brought against hospitals under § 5–37.1–1(f).

In light of the foregoing, we conclude that this complaint does involve a claim for medical malpractice as that term is defined in § 5–37.1–1(f). It is not an action for personal injuries based upon common-law negligence as the plaintiffs contend, but rather a claim for relief expressly controlled by our medical-malpractice statute. Consequently, the trial justice's application of the two-year statute of limitations for medical-malpractice actions in this case and his dismissal of the plaintiffs' complaint were entirely proper. This was a medical-malpractice action in which the claimants' right to relief had expired by the running of the applicable limitations period.

For the reasons stated, the plaintiffs' appeal is denied and dismissed, the judgment of the Superior Court is hereby affirmed, and the papers in the case may be remanded to the Superior Court.

SHEA, Justice, with whom KELLEHER, Justice, joins, dissenting.

I cannot agree with the majority's holding that the two-year statute of limitations for medical-malpractice actions should apply to this case.

The plaintiffs, Marion and Philip Vigue, have brought a claim against an unnamed nurse and the hospital where the nurse is employed and where Marion Vigue was a patient. Mrs. Vigue alleges that she fell and injured herself because the nurse allowed her to walk to the bathroom unattended. The plaintiffs filed their complaint within the three-year statute-of-limitations period applicable to personal-injury claims (G.L.1956 (1969 Reenactment) § 9–1–14 as amended by P.L.1976, ch. 188, § 1) but not within the two-year statutory period applicable to claims for medical malpractice at the time this claim arose. Section 9–1–14.1. The plaintiffs contend that their complaint, which alleges negligence against a nurse, states a claim in ordinary common-law negligence, not in the specialized area of negligence known as medical malpractice. Since the statute of limitations applicable to ordinary negligence would not bar a claim against the nurse, plaintiffs contend that it should not bar their claim, under a theory of *respondeat superior*, against the nurse's hospital-employer.

The outcome of this appeal and the ability of the Vigues to obtain their day in court turns on the meaning and application of the statutory term "medical malpractice." The ultimate question is whether lack of due care by a nurse falls within the limited area of negligence known as medical malpractice. The Legislature has not defined the term; therefore, we must use the rules of statutory construction to determine its meaning. The majority's reliance on the definition of the term "malpractice" contained in G.L.1956 (1976 Reenactment) chapter 37.1 of title 5 is not correct. Chapter 37.1 deals with the Board of Medical Review established by the Legislature in 1976 to investigate and adjudicate independently claims of unprofessional conduct alleged against licensed physicians. It in no way establishes a claim available to plaintiffs in court. This section was intended to establish an independent forum to adjudicate charges of unprofessional conduct against licensed physicians. The Board of Medical Review has the power to reprimand, suspend, or revoke the license of physicians that it finds guilty of unprofessional conduct. Section 5–37.1–13. This section, in our opinion, establishes a review of physicians' conduct, totally independent of the courts and these plaintiffs' common-law action. And even if chapter 37.1 were applicable, it is explicitly limited to licensed physicians and does not include complaints

against nurses. Section 5–37.1–3(2). In defining the statute, therefore, we must assume that the Legislature intended to give the words their ordinary meaning. *Mount Pleasant Cab Co. v. Rhode Island Unemployment Compensation Board*, 73 R.I. 7, 15, 53 A.2d 485, 489 (1947).

It appears to be the unanimous holding in states with similar statutes of limitations for medical-malpractice claims that the negligence of a nurse constitutes ordinary negligence rather than medical malpractice. *Kambas v. St. Joseph's Mercy Hospital*, 389 Mich. 249, 205 N.W.2d 431 (1973); *Wolff v. Jamaica Hospital*, 11 A.D.2d 801, 205 N.Y.S.2d 152 (1960); *Richardson v. Doe*, 176 Ohio St. 370, 199 N.E.2d 878 (1964); *see* Lillich, *The Malpractice Statute of Limitations in New York and Other Jurisdictions*, 47 Cornell L.Q. 339, 340 (1962); Note, *When is Malpractice by a Physician Actionable?*, 21 St. John's L.Rev. 77, 78 (1946); Annot., 8 A.L.R.3d 1336 (1966).

The legislation that enacted the lower period in which to bring a claim for medical malpractice was passed by the Legislature in 1976 in response to the alleged "mid-1970s medical malpractice crisis." *Boucher v. Sayeed*, R.I., 459 A.2d 87, 88 (1983). The Legislature apparently sought a response to a threatened *"doctors' strike"* because *"physicians * * * were resentful of 'steep increases in premium rates.'"* *Id.*, 459 A.2d at 89. (Emphasis added.) Nowhere does it appear that the Legislature intended the shorter two-year statute of limitations to extend beyond claims against physicians.[6] The term "malpractice" has been consistently used at common law to apply only to the negligence of physicians and surgeons. *Blastos v. Elliot Community Hospital*, 105 N.H. 391, 392,

200 A.2d 854, 856 (1964).[7] We should not imply that the Legislature intended a broader meaning for this term than that established at common law absent a specific indication otherwise. *Richardson v. Doe*, 176 Ohio St. at 372–73, 199 N.E.2d at 880.

We should not extend the meaning of the term "medical malpractice" beyond claims against physicians and surgeons merely because a hospital is named as a defendant. To extend the term as the majority has done invites inclusion under the term "medical malpractice" of alleged negligent actions by orderlies, administrative staff, and maintenance workers. I do not believe that the Legislature intended such a broad meaning.

There does not appear to be any compelling reason to include nurses within the term "medical malpractice". Physicians are required to exercise their independent judgment on matters that may mean the difference between life and death. The duty they owe to plaintiffs is generally based on the physician-patient relationship. A nurse, although highly skilled, well trained, and essential to the delivery of health care, is not in the same category as a physician. A nurse is not authorized to practice medicine. *See generally* G.L.1956 (1976 Reenactment) chapter 34, title 5. As the Ohio Supreme Court stated:

"[A nurse's] primary function is to observe and record the symptoms and reactions of patients. A nurse is not permitted to exercise judgment in diagnosing or treating any symptoms which the patient develops. Her duty is to report them to the physician. * * * It is in the areas of diagnosis and prescription that there is the greatest danger of unwarranted

---

6. The Legislature has indicated its intention to treat medical-malpractice claims in the same manner as claims for personal injury. The Legislature in 1981 amended G.L.1956 (1969 Reenactment) § 9–1–14.1 to extend the statute-of-limitations period for medical-malpractice claims to three years.

7. This also appears to be true in the medical profession. A review of various articles from the *Journal of the American Medical Association* shows the use of the term "medical malpractice" is limited to the actions of physicians. *See* Hassard, *Professional Liability Claims Prevention*, 163 J.A.M.A. 1267 (1957); Morris, *"Res Ipsa Loquitur"—Liability Without Fault*, 163 J.A.M.A. 1055 (1957).

claims. A nurse by the very nature of her occupation is prohibited from exercising an independent judgment in these areas and thus is not subject to such claims." *Richardson v. Doe*, 176 Ohio St. at 373, 199 N.E.2d at 880.

Medical malpractice is nothing more than a specialized subsection of the theory of negligence applicable to physicians and surgeons because of the special knowledge, training, and skill they possess.

In the present case, Mrs. Vigue alleges that the nurse negligently allowed her to walk to the bathroom unattended when she knew or should have known that Mrs. Vigue was not able to walk without assistance. The failure to assist her adequately, if proved, would simply represent a claim based on ordinary negligence. No negligence is alleged against any physician or surgeon but only against a nurse employed by the defendant hospital. In view of this fact, I conclude that the plaintiffs' action should not be deemed one for medical malpractice. The hospital, being liable in the present case solely on the basis of *respondeat superior*, can be in no different position from that of the agent through whom it acts. Because I conclude that the three-year statute of limitations applicable to personal injury claims should apply, I would reverse the judgment of the Superior Court and remand the case to allow the plaintiffs to proceed with their claim.