# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 145

**OCTOBER TERM, A.D. 2014**

**November 10, 2014**

|  |  |
|---|---|
| JEFFREY GERARD IRENE and CHRISTINE DELAUTER as conservator of minor children MI and EI,<br><br>Appellants<br>(Plaintiffs),<br><br>v.<br><br>SENECA INSURANCE COMPANY, INC., a foreign corporation, LEDERMAN BONDING COMPANY, a foreign corporation, and ERIC A. OVERLIE,<br><br>Appellees<br>(Defendants). | S-13-0232 |
| LEDERMAN BONDING COMPANY, a foreign corporation, and ERIC A. OVERLIE,<br><br>Appellants<br>(Defendants),<br><br>v.<br><br>JEFFREY GERARD IRENE and CHRISTINE DELAUTER as conservator of minor children MI and EI,<br><br>Appellees<br>(Plaintiffs). | S-13-0233 |

SENECA INSURANCE COMPANY, INC., a foreign corporation,

Appellant
(Defendant),

v.

S-13-0234

JEFFREY GERARD IRENE and CHRISTINE DELAUTER as conservator of minor children MI and EI,

Appellees
(Plaintiffs).

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

***Representing Appellants, Jeffrey Gerard Irene and Christine DeLauter, S-13-0232:***
Kenneth R. Friedman and A. Richard Dykstra, Friedman Rubin, Seattle, Washington; Robert T. Ingram and Scott J. Olheiser, Ingram Olheiser, P.C., Casper, Wyoming. Argument by Mr. Dykstra.

***Representing Appellee, Seneca Insurance Company, S-13-0232:***
William M. McKellar, McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming; Harry Steinberg, Lester Schwab Katz & Dwyer, LLP, New York, New York. Argument by Mr. Steinberg.

***Representing Appellees, Lederman Bonding Company and Eric A. Overlie, S-13-0232:***
Scott P. Klosterman, Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument by Mr. Klosterman.

**Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.**

***\*Chief Justice at time of oral argument.***

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Jeffrey Irene incurred serious injuries after being struck and pinned under a vehicle driven by Douglas Downs in the early morning hours of December 30, 2007. Mr. Downs had been arrested for driving while under the influence of alcohol approximately two hours prior to the incident and was detained at the Natrona County jail.   Eric Overlie, a licensed bail bondsman and an agent of Lederman Bonding Company, posted bail to procure Mr. Downs' release from custody.   Mr. Irene and Christine DeLauter, as conservator of Mr. Irene's minor children MI and EI, filed suit against Mr. Overlie and Lederman, as well as Seneca Insurance Company, the entity which guaranteed the bond, claiming that Mr. Overlie had been negligent in releasing Mr. Downs from his custody after bailing him out of jail.   All defendants filed motions for summary judgment asserting that they did not have a duty to protect Mr. Irene or other members of the general public from injury caused by Mr. Downs.   The district court denied the motions.

[¶2]    Approximately one month prior to the final pretrial conference, Mr. Overlie, Lederman, and Seneca filed motions to dismiss the complaint under W.R.C.P. 12(b)(6), claiming the suit had not been filed within the two-year statute of limitations set forth at Wyo. Stat. Ann. § 1-3-107, which governs causes of action arising from the rendering of licensed or professional services.   The district court granted the motions to dismiss.   In Docket No. S-13-0232, Mr. Irene and Ms. DeLauter challenge the district court's dismissal of their complaint.   Mr. Overlie and Lederman challenge the denial of their motion for summary judgment in Docket No. S-13-0233, and Seneca challenges the denial of its motion for summary judgment in Docket No. S-13-0234.   We reverse the district court's decision to dismiss the complaint under W.R.C.P. 12(b)(6) in Docket No. S-13-0232.   As a result of that decision, and because the orders denying the motions for summary judgment are not final, appealable orders, we dismiss the appeals in Docket Nos. S-13-0233 and S-13-0234.

***ISSUES***

[¶3]    In Docket No. S-13-0232, Mr. Irene and Ms. DeLauter present the following issues:

> 1.   Whether the trial court erred in applying the rule stated in *St. John v. Wagner* when it ruled that Defendant Overlie's negligent acts were "of a professional nature."
>
> 2.   Whether Wyoming's professional malpractice statute, § 1-3-107, applies when a "professional" negligently harms a non-client third party with whom he has no professional relationship or dealings.

1

We do not address the issues raised in Appellees' cross-appeals.[1]

---

[1] In Docket No. S-13-0233, Mr. Overlie and Lederman assert a single issue:

1. On December 30, 2007, Eric Overlie, a licensed bail bondsman, posted a bail bond for Douglas Downs' release from the Natrona County detention center. Mr. Overlie then drove Mr. Downs to his bail bond office where Mr. Downs proceeded on foot to a nearby bar to catch a ride home with his friends. Did Mr. Overlie owe a legal duty of care to members of the general public to protect them from injury caused by Mr. Downs' subsequent actions?

In Docket No. S-13-0234, Seneca raises five issues:

1. Did the trial court properly conclude that there was an issue of fact as to whether Seneca Insurance Co., which did nothing more than serve as the surety on a bail bond, owed a duty of care to plaintiff, who was injured by the bailed defendant in an automobile accident after he had been released on the bond that Seneca insured?

2. Can Seneca Insurance Co., which did nothing more than serve as the surety on a bail bond, be held liable in negligence under Restatement (Second) of Torts §§ 319 and 324A, which, respectively, impose duties on those who take charge of a person with known dangerous proclivities and undertake to render services upon which third parties rely?

3. Can plaintiff seek to impose liability upon Seneca Insurance Co. on the theory that Seneca is vicariously liable for any negligence by the bondsman who posted the bail bond for the driver of the accident vehicle, because it had, as required by Wyoming law, designated the bondsman to be an insurance agent?

4. Was the act of the non-party owner of the accident vehicle, in giving the keys to her vehicle to the bailed defendant and allowing him to drive it, an intervening and superseding act that cut off any possible liability that Seneca Insurance Co. may have had, even if it was negligent in some manner?

5. Can plaintiff claim that the bondsman's signing of a hold harmless agreement to indemnify the Natrona County Sheriff for any liability resulting from the release of the bailed defendant, impose a duty on the bondsman, and Seneca Insurance Co., to indemnify plaintiff for the injuries he sustained when he was struck by a vehicle driven by the bailed defendant after he was released on bond?

## FACTS

[¶4]   On the night of December 29, 2007, Douglas Downs was arrested for driving under the influence of alcohol after spending part of the evening drinking at the Sandbar Lounge in Casper, Wyoming.  He was taken to the Natrona County jail, where a breath test revealed a .11% blood alcohol content.  At approximately 1:00 a.m. on December 30, Mr. Downs was released from custody after a surety bond was posted by Eric Overlie, an agent of Lederman Bonding Company.  As a condition of Mr. Downs' release, the Natrona County Sheriff's Office required Mr. Overlie to sign a "Release and Hold Harmless Agreement" under which Mr. Overlie agreed "to hold Natrona County Sheriff['s] Office, its agents, [and] employees harmless from any liability resulting from this release."

[¶5]   Mr. Overlie drove Mr. Downs to the office of Speedy Release Bail Bonds, which was located on the same street as the Sandbar Lounge.  Mr. Downs then walked from the office to the Sandbar, telling Mr. Overlie that he would catch a ride home with friends who had remained at the bar.  After arriving at the bar, Mr. Downs consumed another alcoholic beverage before agreeing to drive a friend home in her vehicle.  As Mr. Downs was exiting the parking lot in his friend's truck, he struck Mr. Irene, who became trapped underneath the vehicle.  Mr. Downs proceeded to drive over a mile while dragging Mr. Irene beneath the vehicle, which resulted in serious injuries to Mr. Irene.

[¶6]   Appellants filed their complaint on September 13, 2011.  The Release and Hold Harmless Agreement was attached to the complaint.  Appellants claimed that Mr. Overlie had been negligent in agreeing to accept custody of Mr. Downs from the Natrona County Sheriff and in releasing him under circumstances in which he was likely to cause harm to others.  In August, 2013, after approximately two years of discovery, Appellees filed motions for summary judgment.  They also moved to dismiss the complaint under Rule 12(b)(6), asserting that the complaint was not filed within the two-year statute of limitations for "professional malpractice" under Wyo. Stat. Ann. § 1-3-107.[2]   The motions were heard at a final pretrial conference held on September 6, 2013.  Following

---

[2] The statute provides, in relevant part, as follows:

> **§ 1-3-107.  Act, error or omission in rendering professional or health care services.**
>
> (a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:
>
>> (i) Within two (2) years of the date of the alleged act, error or omission . . . .

the hearing, the district court denied the motions for summary judgment and granted the motions to dismiss. The court found that "[a]ll of the acts of negligence asserted in the Complaint for Damages in this action are alleged to have been committed by Defendant Eric A. Overlie while rendering licensed or certified professional insurance and bail bond services." As a result, the court concluded that the complaint had not been timely filed under Wyo. Stat. Ann. § 1-3-107.

[¶7] Mr. Irene and Ms. DeLauter appealed the district court's dismissal of their complaint under W.R.C.P. 12(b)(6). Appellees filed cross-appeals challenging the denials of their motions for summary judgment. The appeals were consolidated for argument and decision.

## *STANDARD OF REVIEW*

[¶8] When reviewing a W.R.C.P. 12(b)(6) motion to dismiss, we accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff. We will sustain such a dismissal when it is certain from the face of the complaint that the plaintiff cannot assert any fact which would entitle him to relief. *Stroth v. North Lincoln County Hosp. Dist.*, 2014 WY 81, ¶ 6, 327 P.3d 121, 125 (Wyo. 2014). Dismissal under W.R.C.P. 12(b)(6) is a drastic remedy, which should be granted sparingly, and is appropriate only when it is certain the plaintiff cannot assert any facts that would entitle him to relief. *Simon v. Teton Bd. of Realtors*, 4 P.3d 197, 200 (Wyo. 2000).

## *DISCUSSION*

### Docket No. S-13-0232 – Dismissal Under W.R.C.P. 12(b)(6)

[¶9] In their complaint, Appellants asserted two causes of action against Appellees. In their first cause of action, Appellants alleged that

> 45. Defendants . . . took charge and control of Downs, whom they knew or should have known to be likely to cause bodily harm to others if not controlled and given the opportunity to operate a motor vehicle. Despite this knowledge, [Defendants] released charge and control of Downs, and thereby breached a duty of ordinary care of a reasonable person in the same or similar circumstances.

They also alleged that

> 46. Defendants . . . breached their duty of ordinary care when Overlie accepted custody and responsibility for Mr. Downs and knowingly allowed him to return to the

4

Sandbar Lounge under such circumstances that they knew or should have known he was likely to drive a vehicle while under the influence of alcohol, and posed a serious danger of injury or death to others while operating a vehicle.

In their second cause of action, Appellants alleged that Appellees had breached a duty under Restatement (Second) of Torts § 324A, which provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

According to the complaint,

> 49. It is the stated policy of the Natrona County Sheriff's Office that it will not release an intoxicated individual from its custody unless a sober adult person agrees to take custody, responsibility and control of the intoxicated person. Overlie was aware of this policy at the time that he signed Exhibit B, and agreed to such an undertaking to obtain Mr. Downs['] release from jail. The Natrona County Sheriff's Office relied upon Overlie's undertaking of the custody, responsibility and control of Mr. Downs in order to release him to the custody of Mr. Overlie and allow him to leave the jail.
>
> 50. Overlie was acting within the scope of his actual or apparent agency for Defendants Seneca, Bail USA and Lederman in signing Exhibit B, the Release and Hold Harmless Agreement, to secure the release of Mr. Downs from jail.

5

. . .

53.    In undertaking the custody, responsibility and control of Mr. Downs, Overlie agreed to perform a duty owed by the Natrona County Sheriff's Office to protect the public, including Plaintiffs, from the harm caused by intoxicated persons who are likely to drive a vehicle under the influence of alcohol and cause serious physical injury or death.

54.    Overlie failed to exercise reasonable care in the custody, responsibility and control of Mr. Downs when he allowed Mr. Downs to return to the bar where he had been drinking before his arrest for DUI.

. . .

57.    By failing to exercise ordinary care to avoid injury to third persons in performing its contractually assumed duties, Seneca, Bail Bonds USA, Lederman and Overlie are liable for injuries to the public.

Attached to the complaint as Exhibit B was the "Release and Hold Harmless Agreement" of the Natrona County Sheriff's Office. It provides: "The undersigned [hereby] accepts custody of Douglas Dean Downs on release from the Natrona County Sheriff[']s] Office Jail. The undersigned further accepts responsibility for Douglas Dean Downs and agrees to hold Natrona County Sheriff[']s] Office, its agents, [and] employees harmless from any liability resulting from this release." Mr. Overlie signed the agreement as the "person accepting custody." In the space marked "relationship," he wrote "bondsman."

[¶10]  In granting Appellees' motions to dismiss, the district court found that "[a]ll of the acts of negligence asserted in the Complaint for Damages in this action are alleged to have been committed by Defendant Eric A. Overlie while rendering licensed or certified professional insurance and bail bond services." Based upon that analysis, the district court concluded that the two-year statute of limitations set forth at Wyo. Stat. Ann. § 1-3-107 applied.

[¶11]  Appellants contend the district court erred in finding their claim was governed by the two-year statute of limitations set forth at Wyo. Stat. Ann. § 1-3-107 (LexisNexis 2011).[3]  As noted above, that statute provides, in relevant part, as follows:

---

[3] Appellants claim that the four-year statute of limitations set forth at Wyo. Stat. Ann. § 1-3-105(a)(iv)(C)

6

**§ 1-3-107. Act, error or omission in rendering professional or health care services.**

(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

> (i) Within two (2) years of the date of the alleged act, error or omission . . . .

Appellants claim the statute does not apply because "Overlie's negligent release of Downs was not a 'professional act' as defined in *St. John v. Wagner*, 2013 WY 69, ¶ 9, 302 P.3d 906, 908 (Wyo. 2013)." Additionally, Appellants contend that Mr. Irene and Mr. Overlie "never had the 'professional relationship' necessary to form the basis for a professional malpractice claim."

[¶12] Appellees contend the district court properly concluded that the statute of limitations set forth at Wyo. Stat. Ann. § 1-3-107 was applicable to Appellants' claim because all acts alleged by Appellants were committed by Mr. Overlie while acting in his professional capacity. Appellees note that "anything that happened during the period immediately following Mr. Downs' release on the bond that Mr. Overlie had posted arose out of that professional relationship." They further contend that because Mr. Overlie signed the Natrona County Sheriff's hold harmless agreement as a bondsman, his "negligence was 'professional' in nature and, therefore, within the ambit of § 1-3-107(a)."

[¶13] Appellants rely on our decision in *St. John v. Wagner* to support their position. In that case, we concluded that the appellee had not acted in his professional capacity as a licensed dentist when he required the appellant, a patient who had received professional dentistry services from the appellee, to obtain credit from a particular credit card company to pay for the services rendered. *Id.*, ¶ 9, 302 P.3d at 908. Accordingly, we held that the statute of limitations set forth at Wyo. Stat. Ann. § 1-3-107 did not apply to the appellant's claim. *Id.* In reaching that determination, we distinguished our holding in *Prokop v. Hockhalter*, 2006 WY 75, 137 P.3d 131 (Wyo. 2006), in which we concluded that professional hunting guides qualify as "professionals" for purposes of Wyo. Stat. Ann. § 1-3-107(a). We quote from that discussion at length:

---

applies to the causes of action asserted in their complaint.

The appellee argues that the appellant's WCPA [Wyoming Consumer Protection Act] claim is time-barred by the statute because the claim arose out of the appellant's "professional relationship" with the appellee. The phrase "professional relationship" is not, however, found in the above statute. For that reason, the appellee relies upon this Court's holding in *Prokop v. Hockhalter*, 2006 WY 75, 137 P.3d 131 (Wyo. 2006). In that case, Prokop hired a professional hunting guide to take him on a guided bighorn sheep hunt. Prokop terminated the hunt three days after the outing began. *Id.* at ¶ 4, at 132. Two years and five days later, Prokop filed a claim alleging breach of contract, negligence, and intentional infliction of emotional distress. *Id.* at ¶ 5, at 132-33. Relying upon the two-year statute of limitations applicable to professional services found in Wyo. Stat. Ann. § 1-3-107(a), the federal district court granted summary judgment in favor of the hunting guide. *Id.* at ¶ 5, at 133. Following an appeal, the Tenth Circuit Court of Appeals certified the following questions to this Court: whether the relevant statute of limitations applies to actions against professional hunting guides, and, if so, whether it applies to contract claims as well as tort claims. *Id.* at ¶ 1, at 132.

After concluding that professional hunting guides qualify as professionals for purposes of Wyo. Stat. Ann. § 1-3-107(a), this Court determined that the statute of limitations at issue applied to contract claims as well as tort claims. *Prokop*, 2006 WY 75, ¶ 16, 137 P.3d at 136. We relied upon a Nebraska Supreme Court case holding that "[i]f all [] claims are based on a single ***professional relationship*** [] they may not be separated into various parts to allow different periods of limitation to be applied." *Reinke Mfg. Co., Inc. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380, 387 (1999) (emphasis added). The appellee concludes that, because the appellant's WCPA claim "undoubtedly arises out of her professional relationship" with the appellee, the two-year statute of limitations applies and the claim was properly dismissed.

Neither party disputes the fact that dentistry qualifies as a licensed profession. The question before us, therefore, is limited to whether the appellant's WCPA claim arose "from an act, error or omission in the rendering of licensed or certified professional or health care services." Wyo. Stat.

Ann. § 1-3-107(a). By contending that Wyo. Stat. Ann. § 1-3-107 is applicable, the appellee misinterprets *Prokop* and construes "professional relationship" to include a broader range of activity than intended by the legislature. The circumstances surrounding the appellant's and the appellee's dispute do, indeed, derive from the fact that the appellant sought the appellee's professional services. All interactions between dentist and patient do not, however, constitute the rendering of professional services under the statute. In *Reinke*, upon which *Prokop* relies, the court determined that application of the two-year statute of limitations would require a determination of whether the professional was "acting in a 'professional' capacity." *Reinke*, 590 N.W.2d at 388.

> In determining whether a particular act is of a professional nature or a professional service, the court must look to the nature of the act itself and the circumstances under which it was performed. *Swassing v. Baum*, 195 Neb. 651, [656,] 240 N.W.2d 24[, 27] (1976). A professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge which is attained from often long and intensive preparation and instruction in skills and methods and the scientific, historical, and scholarly principles underlying such skills and methods. *Jorgensen v. State Nat. Bank & Trust*, [255 Neb. 241, 245, 583 N.W.2d 331, 334 (1998)].

*Reinke*, 590 N.W.2d at 388. This is similar to the language of our professional malpractice statute of limitations, which by its terms applies to "a cause of action arising from an act, error or omission ***in the rendering of licensed or certified professional or health care services***." Wyo. Stat. Ann. § 1-3-107(a) (emphasis added). ***The appellee is a licensed provider of dental care. He acts in his professional capacity when he performs dentistry.*** While there may be instances where a professional's billing practices are so closely intertwined with his or her professional services so as to be considered part of those professional services, that is not true in this case. Requiring a patient to obtain credit from a particular credit card company falls beyond the provision of "licensed or

9

certified professional health care services."

*St. John*, ¶¶ 7-9, 302 P.3d at 907-908 (emphasis added).

[¶14]  As indicated by our discussion in *St. John*, in determining whether a particular act or service is professional in nature, we must compare the nature of the particular service rendered to the typical duties performed by the licensed or certified professional.  In some cases, as in *St. John*, the issue of whether a licensed or certified professional is providing professional services at the time of the conduct giving rise to a claim against the professional may be easily resolved by reference to a common understanding of the duties of the profession.  Whether a particular service constitutes a professional service under Wyo. Stat. Ann. § 1-3-107, however, is not always as clear as the difference between dentistry and consumer financing.  Answering that question in the present case requires a clear understanding of the contours of the typical services rendered by a professional bail bondsman.

[¶15]  According to one legal encyclopedia, a bail bondsman is licensed to sell surety agreements to criminal defendants who are required to post bail in order to be released from the custody of the State.  8A Am. Jur. 2d *Bail and Recognizance* § 105.  Generally, the obligation of sureties on a bail bond is that they will produce the accused in open court when his or her presence is required in accordance with the terms of the bond.  *Id.* Under this arrangement, the surety assumes the risk of a defendant's failure to appear in court and, in order to protect its interest, must take steps to prevent a defendant from absconding from the jurisdiction.  *Id.*  A surety, however, "may not shackle, confine, or impede the principal in his or her daily movements, even though the state may so restrict defendants in its custody; rather, the bail arrangement implies only that the surety obtains sufficient control over the principal to assure his or her appearances . . . ."  8A Am. Jur. 2d *Bail and Recognizance* § 107.  According to this source, then, a bail bondsman acts in his professional capacity when he sells insurance to criminal defendants and when he secures the attendance of criminal defendants in court.  The wrongful conduct asserted in the complaint did not arise from either of these activities.[4]

[¶16]  In Wyoming, the licensing requirements for a bail bondsman appear to be directed solely to the ability of a bail bondsman to sell insurance.  In a formal opinion addressing the Insurance Department's authority to regulate the activities of bail bondsmen, the Wyoming Attorney General noted that "Bail bondsmen are typically viewed as offering

---

[4] For purposes of addressing the motion to dismiss, Appellants do not dispute that the sale of bail bonds is a professional service, or that a claim of negligence in the issuance of a bail bond would be governed by the statute of limitations set forth in Wyo. Stat. Ann. § 1-3-107.  Whether Wyo. Stat. Ann. § 1-3-107 applies to the sale of insurance is not an issue that is before the court at this time.

or engaging in the business of insurance" and that "Regulation often takes the form of licensing by a state agency, like an insurance department, in addition to requirements by the courts that must be met." 1996 Wyo. Op. Atty. Gen. 14, 1 (citing *Klevenhagen v. International Fidelity Insurance Company*, 861 S.W.2d. 13, 16 (Tex. App. Houston 1st Dist. 1993); 13 A.L.R.3d 618). Indeed, in Wyoming, the activities of bail bondsmen are regulated through statutes providing for licensing of insurance producers. Pursuant to Wyo. Stat. Ann. § 26-9-203, "A person shall not sell, solicit or negotiate insurance in this state for any class or classes of insurance unless the person is licensed for that line of authority in accordance with this chapter." In order to obtain an insurance producer license, an individual must be at least eighteen years old, must not have committed any act that is grounds for denial under Wyo. Stat. Ann. § 26-9-211, must have paid the necessary fees, must have successfully passed the appropriate examination, and must have passed a criminal history record background check. Wyo. Stat. Ann. § 26-9-206. The statutes give no indication that the licensing requirements encompass any of the activities of Mr. Overlie that are at issue in this litigation other than providing the surety bond.

[¶17] Appellees point out that Mr. Overlie noted, on the hold harmless agreement, which was attached to the complaint, that his relationship to Mr. Downs was that of "bondsman." This fact, however, does not establish that taking custody of persons who have been arrested following their release is part of the professional responsibilities of a bail bondsman. There is nothing in the complaint alleging that a bondsman receives training in such activity, or that knowledge of such practices is required for licensure. Indeed, as noted by Appellants in their complaint, any sober adult was permitted to take custody of Mr. Downs upon execution of the Natrona County Sheriff's hold harmless agreement. The hold harmless agreement gives no indication that the form must be signed by the same person who posts the bail bond.

[¶18] Appellees direct us to assertions in the complaint relating to vicarious liability to support their position. The complaint states that "On information and belief Seneca has the right to control the conduct of Overlie with respect to the issuance of bonds on its behalf." The complaint also states that "Overlie was acting within the scope of his actual or apparent agency for Defendants Seneca, Bail USA and Lederman in signing Exhibit B, the Release and Hold Harmless Agreement, to secure the release of Mr. Downs from jail." These facts, however, when viewed in the light most favorable to Appellants, do not constitute an admission that executing the hold harmless agreement or transporting Mr. Downs after bailing him out of jail were professional acts. Appellees have not established that such activities would fit, as a matter of law, within the professional duties of a bail bondsman as required by our decision in *St. John v. Wagner*. Based upon the foregoing, we find that it was not clear from the face of the complaint that Mr. Overlie was rendering a professional service within the strictures of Wyo. Stat. Ann. § 1-3-107.

[¶19] Before leaving this issue we would offer two additional observations. First, we

11

must keep in mind that the running of a statute of limitations is an affirmative defense and the burden is on the defendant to establish that the limitations period applies. *Whitney Holding Corp. v. Terry*, 2012 WY 21, ¶ 11, 270 P.3d 662, 666 (Wyo. 2012). Stated differently, Appellants were not required to assert in their complaint that Wyo. Stat. Ann. § 1-3-107 was not applicable.

[¶20] Second, the unusual procedural posture of this case at the time of filing of the motions to dismiss warrants brief comment. Typically, a motion to dismiss asserting a statute of limitations bar to the causes of action asserted in the complaint is filed early in the litigation process. That did not happen in this case. Here, the motions to dismiss were filed nearly two years after the litigation had been commenced. During those two years, the parties engaged in protracted discovery. Shortly before the final pretrial conference was to be held, Appellees filed their motions to dismiss alleging that the action was barred by the statute of limitations set forth in Wyo. Stat. Ann. § 1-3-107. In their appellate briefs, the parties reference evidence adduced during discovery that was not reflected in the allegations of the complaint. In resolving a challenge to a Rule 12(b)(6) dismissal, however, our focus is on the allegations of the complaint, and our standard of review requires that we view the facts as alleged in the complaint in the light most favorable to the plaintiffs, and we can affirm the dismissal only "when it is certain from the face of the complaint that the plaintiff cannot assert any fact which would entitle him to relief." *Stroth*, ¶ 6, 327 P.3d at 125. Simply put, the facts adduced during discovery are not relevant to our analysis.[5]

[¶21] We would note, however, that the information obtained during discovery illustrates the difficulty in determining whether the actions at issue fit within the ambit of Wyo. Stat. Ann. § 1-3-107. In her deposition testimony, Jeanine Beagle, a bail bondswoman in Casper, Wyoming, stated that she rarely signed the release agreement:

> I think I've done it maybe five times in fourteen years. I don't like doing it. I've done it I think about like three times – three or four times when I knew them and the parent was

---

[5]Appellees did not produce evidence outside the pleadings in their motions to dismiss, and neither party sought conversion of the motion to dismiss to a motion for summary judgment under Rule 12(b). That rule provides as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

coming up the hill. I knew they were almost in the parking lot. They were coming up the hill. They're on their way. They're going to take responsibility. And the sheriff's already brought the child or person out. And so I'll sign it so that the sheriff can get back and do what he needs to be doing, knowing that the guarantor is coming in.

. . .

I don't like doing it unless I feel that we already know somebody is coming to take them home.

When Ms. Beagle was asked what she would do in a situation involving an arrestee who is extremely intoxicated at the time of the arrestee's release from jail, she stated:

There's always a guarantor. And usually it's a parent. Not 100 percent, but usually it's a parent. They sign [the release agreement], and they take custody. Again, when I post the bail bonds, I stay there. I wait. I have everybody fill out paperwork even if they're drunk. We talk to them, make sure they can understand as clear as can be, and then we make sure that there's – that [the] guarantor has taken custody.

Similarly, Beverly Vitamvas, who is also a bail bondswoman in Casper, stated that she never signed the release agreement because she wasn't "going to be responsible for what some drunk does when he gets out of jail."

[¶22] In the majority of cases involving the applicability of a statute of limitations, the facts are undisputed. When relevant facts are undisputed, we have stated that the issue of whether a statute of limitations applies is resolvable as a matter of law. *See St. John*, ¶ 6, 302 P.3d at 907. We have also held, however, that when facts are in dispute, the applicability of a statute of limitations involves a mixed question of law and fact. *Moats v. Prof'l Assistance, LLC*, 2014 WY 6, ¶ 21, 319 P.3d 892, 897 (Wyo. 2014). For example, in *Safecard Servs., Inc. v. Halmos*, 912 P.2d 1132 (Wyo. 1996), we found that the applicability of the relevant statute of limitations depended on whether the defendant, a corporate fiduciary, had engaged in wrongful self-dealing under the rule of *Bovay v. H. M. Byllesby & Co.*, 27 Del. Ch. 381, 38 A.2d 808, 820 (1944). We held that

Application of the *Bovay* rule to the statute of limitations in a case such as this one, where the corporation files suit against a corporate fiduciary, requires an answer to the question of whether the corporation knew or had reason to know that a legal wrong had been committed against it, an inquiry which

13

is a question of fact for a jury.

*Safecard*, 912 P.2d at 1135. In *St. John*, we were able to determine as a matter of law that the defendant was not acting in his professional capacity when rendering the services in question. We are reluctant to make a similar determination in this case at this juncture. The applicability of Wyo. Stat. Ann. § 1-3-107 in the present case may require resolution of a factual dispute relating to the professional duties of a licensed bail bondsman. In any event, however, it is not at all clear from the face of the complaint that Mr. Overlie was performing professional services that would render Wyo. Stat. Ann. § 1-3-107 applicable. The facts as stated in the complaint, and viewed in the light most favorable to Appellants, do not establish that Mr. Overlie was rendering licensed or professional services when he signed the Natrona County Sheriff's Office hold harmless agreement and released Mr. Downs from his custody. In reaching that conclusion, we would emphasize that we are not determining whether the alleged negligence in this case arose out of Mr. Overlie's services as a professional bail bondsman. That question, however, cannot be answered in the affirmative based solely on the facts alleged in the complaint. Accordingly, we reverse the district court's grant of Appellees' motions to dismiss in Docket No. S-13-0232.

**Docket Nos. S-13-0233; 0234 – Denial of Summary Judgment**

[¶23] In Docket Nos. S-13-0233 and S-13-0234, Mr. Overlie, Lederman, and Seneca challenge the district court's denial of their motions for summary judgment. They claim, generally, that the district court erred in concluding that they owed a duty of care to Mr. Irene. The denial of a defendant's summary judgment motion is generally not a final appealable order. *Campbell County Mem. Hosp. v. Pfeifle*, 2014 WY 3, ¶ 12, 317 P.3d 573, 576 (Wyo. 2014). Although there are exceptions to this general rule, the district court's denial of Appellees' summary judgment motions does not fall within any of those exceptions.[6] Accordingly, we dismiss the appeals in Docket Nos. S-13-0233 and S-13-0234.

[¶24] Reversed and remanded for further proceedings consistent with this opinion.

---

[6] The exceptions to the general rule apply when (1) summary judgment is denied based on a claim of qualified or governmental immunity, and (2) when the court grants one party's motion for summary judgment and denies the opposing party's motion for summary judgment and the court's decision completely resolves the case. *See Campbell*, ¶ 12, 317 P.3d at 576; *Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011).