# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 51

APRIL TERM, A.D. 2025

May 1, 2025

BANKERS STANDARD INSURANCE
COMPANY, a Pennsylvania company,

Appellant
(Plaintiff),

v.

S-24-0168

JTEC, INC., a Wyoming corporation,

Appellee
(Defendant).

*W.R.A.P. 11 Certified Question*
*from the United States Court of Appeals for the Tenth Circuit*
*The Honorable Tymkovich, Ebel, and Moritz, Circuit Judges*

*Representing Appellant:*
    Richard R. Rardin, Cozen O'Connor, Denver, Colorado.  Argument by Mr. Rardin.

*Representing Appellee:*
    Serena L. Hendon and Christopher A. Taravella, Montgomery Little & Soran, Greenwood Village, Colorado.  Argument by Ms. Hendon.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]    This matter comes before the Court as a certified question of state law from the United States Court of Appeals for the Tenth Circuit.   The question asks when a professional's act, error, or omission occurred under Wyo. Stat. Ann. § 1-3-107 (2023) where a professional engineer allegedly designed a defective component in a water system and documented the alleged defect in multiple sets of plans.   This Court accepted the certified question in accordance with Rule 11 of the Wyoming Rules of Appellate Procedure (W.R.A.P.).

## CERTIFIED QUESTION

[¶2]    We agreed to answer the following certified question:

> When does a professional's "act, error[,] or omission" occur under Wyo. Stat. Ann. § 1-3-107 in a tort action (1) between parties not in contractual privity; (2) alleging an engineer negligently designed a component part of an engineering plan; where (3) the engineer submitted several sets of plans, each containing the allegedly defective design?

## FACTS

[¶3]    When answering certified questions of law through W.R.A.P. 11, we rely upon the facts presented by the certifying court.  *Miech v. Sheridan County, Wyo.,* 2002 WY 178, ¶ 2, 59 P.3d 143, 145 (Wyo. 2002) (citing *Kaycee Land & Livestock v. Flahive*, 2002 WY 73, ¶ 3, 46 P.3d 323, 324 (Wyo. 2002)).   Our answer to certified questions is not dependent on factfinding.  *Skoric v. Park County Circuit Court*, 2023 WY 59A, ¶ 3, 532 P.3d 667, 668 (Wyo. 2023); *B&W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 812 (Wyo. 1992).   As such, we summarize the facts the Tenth Circuit provided in its Certification of Question of State Law (Certification Order) as context for our analysis.

[¶4]    JTEC is a licensed professional engineering firm in Wyoming.  In August 2017, JTEC contracted with an architectural firm, Studio Plaid, to design a water mechanical system for the Fairway Lodge housing development in Jackson, Wyoming.   That same month, JTEC stamped its first design plans and submitted them to local officials with a building permit application.[1]   JTEC made additional revisions to the design plans and, on March 1, 2018, produced and stamped its third revision, which included a water entry detail[2] which placed a pressure reducing valve (PRV) downstream of a water filter and

---

[1] The Certification Order explains JTEC's initial August 2017 design plan is not in the record.

[2] The term "water entry detail" generally refers to the design for where water enters a building or system. Here, the water entry detail consists of the plumbing that connects the Grossmans' residence to the residential water system.

1

filter housing at each residence. JTEC sent its sixth (and final) set of engineer-stamped design plans to Studio Plaid on May 31, 2018. Although the sixth revision included small changes from previous versions, the water entry detail did not change from the third revision. After May 31, 2018, JTEC did not submit any other changes to the mechanical plans under its contract with Studio Plaid.

[¶5] Lauren and David Grossman purchased a Fairway Lodge home in January 2019 and insured the property through Bankers Standard Insurance Company (Bankers). The Grossmans' purchase contract for the residence included a copy of JTEC's mechanical plans and the relevant water entry detail design from the fourth revision dated March 6, 2018.

[¶6] In early June 2019, plumbers followed JTEC's design plans and installed the PRV downstream from the water filter and housing at the Grossmans' home. The Certification Order does not indicate which set of engineering plans the plumbers used. The Grossmans moved into their new home in late June 2019.

[¶7] On May 7, 2020, water flooded the Grossmans' home. The Grossmans' plumber determined the water-filter housing had failed because the plumbing had been installed incorrectly. Specifically, Bankers allege that JTEC's placement of the PRV downstream of the water filter exposed the water filter to water pressure it was not designed to withstand. Bankers paid the Grossmans for the damage to their home in accordance with their insurance policy, obtained the right of subrogation, and initiated the underlying action on May 6, 2022. In addition to asserting claims against the general contractor that built the home and the plumber responsible for installing the water entry detail, Bankers sued JTEC, alleging it negligently designed the water entry detail.

[¶8] JTEC moved for summary judgment, arguing Bankers' action was barred by the limitation period in Wyo. Stat. Ann. § 1-3-107 based on a discovery date of May 7, 2020 (the date of the flood) or May 12, 2020 (the date the Grossmans' plumber opined the installation was incorrect). Specifically, JTEC asserted May 31, 2018, the last documented day it provided professional services to Studio Plaid, was the date of the alleged "act, error, or omission" for statute of limitations purposes. Under § 1-3-107(a)(iv), the two-year limitation period for commencing suit is extended by six months if the alleged act, error, or omission is discovered during the second year after the date it occurred. In response, Bankers asserted the operative date for statute of limitation purposes was no later than March 1, 2018, the date of the third revision. That date placed the alleged act, error, or omission outside the original two-year period and, according to Bankers, § 1-3-107(a)(i) therefore provided an additional two-year period after discovery to commence its action. In short, the limitation period in Wyo. Stat. Ann. § 1-3-107 would make Bankers' May 6, 2022, lawsuit timely against JTEC using March 1, 2018, as the trigger date, but would bar the suit as untimely using May 31, 2018.

2

[¶9] The district court agreed with JTEC, granted its summary judgment motion, and dismissed Bankers' claim against the engineering firm. At Bankers' request, the district court then stayed the litigation against the other defendants pending appeal to the Tenth Circuit.

[¶10] The Tenth Circuit issued its Certification Order on July 1, 2024, and it was filed with this Court on July 11, 2024. We agreed to answer the certified question on July 18, 2024. Following briefing by the parties, this Court heard oral argument on January 14, 2025.

## STANDARD OF REVIEW

[¶11] "Certified questions are governed by W.R.A.P. 11. When there is no controlling precedent to a question of law, Rule 11.01 allows this Court to answer pure questions of law 'which may be determinative of the cause' pending in the certifying court." *Sinclair Wyoming Refining Co. v. Infrassure, Ltd.*, 2021 WY 65, ¶ 10, 486 P.3d 990, 994 (Wyo. 2021) (quoting *Preston v. Marathon Oil Co.*, 2012 WY 66, ¶ 4, 277 P.3d 81, 83 (Wyo. 2012)) (internal quotations omitted). Fact finding is not part of this Court's role in answering a certified question. *Id.* (citing *B & W Glass, Inc. v. Weather Shield Mfg.*, 829 P.2d 809, 812 (Wyo. 1992)). Importantly, certainty of facts is not required to answer a pure question of state law. *Id.*

[¶12] The certified question before the Court presents an issue of statutory interpretation. Questions of statutory interpretation are subject to de novo review. *Id.* (citing *Phoenix Vintners, LLC v. Noble*, 2018 WY 87, ¶ 10, 423 P.3d 309, 312 (Wyo. 2018)). Certified questions are questions of law reviewed de novo. *Palm-Egle v. Briggs*, 2024 WY 31, ¶ 11, 545 P.3d 828, 832 (Wyo. 2024) (citing *State v. Mares*, 2014 WY 126, ¶ 10, 335 P.3d 487, 493 (Wyo. 2014)).

## DISCUSSION

[¶13] The certified question requires this Court to examine the language in § 1-3-107 which states in relevant part:

> **§ 1-3-107. Act, error or omission in rendering professional or health care services.**
>
> (a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

(i)      Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(A)      Not reasonably discoverable within a two (2) year period; or

(B)      The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

***

(iv) If under paragraph (i) or (ii) of this subsection, the alleged act, error or omission is discovered during the second year of the two (2) year period from the date of the act, error or omission, the period for commencing a lawsuit shall be extended by six (6) months.

Wyo. Stat. Ann. § 1-3-107(a).

[¶14]   The primary objective in statutory interpretation "is to give effect to the legislature's intent." *Sinclair Wyoming Refining Co.*, ¶ 12, 486 P.3d at 994 (quoting *Cheyenne Newspapers, Inc. v. Bd. of Trustees of Laramie County. Sch. Dist. No. 1*, 2016 WY 113, ¶ 10, 384 P.3d 679, 682 (Wyo. 2016)).   This Court's longstanding method of statutory interpretation begins by first determining if the statute in question is "clear and unambiguous" or "ambiguous or subject to varying interpretations." *Id.* (quoting *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 69, 226 P.3d 889, 916 (Wyo. 2010)).

[¶15]   "A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability.  A statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." *Vahai v. Gertsch,* 2020 WY 7, ¶ 27, 455 P.3d 1218, 1227 (Wyo. 2020) (quoting *State v. Bannon Energy Corp.*, 999 P.2d 1306, 1308-09 (Wyo. 2000)).

[¶16]   "[D]ivergent opinions among parties as to the meaning of a statute may be evidence of ambiguity but [are] not conclusive.  Ultimately, whether a statute is ambiguous is a matter of law determined by the court." *Wyoming Med. Ctr., Inc. v. Wyoming Ins. Guar. Ass'n*, 2010 WY 21, ¶ 19, 225 P.3d 1061, 1066 (Wyo. 2010) (citing *Kennedy Oil v. Dep't of Revenue*, 2008 WY 154, ¶ 10, 205 P.3d 999, 1003 (Wyo. 2008)).

I.      **In a tort action, the absence of contractual privity is not relevant in determining when the limitation in § 1-3-107 attaches.**

[¶17]   Implied in the certified question is whether the absence of contractual privity effects when the statute of limitation attaches to a professional's act, error, or omission in a tort action under § 1-3-107.

[¶18]   We start with the plain meaning of the language in the statute.  *Sinclair Wyoming Refining Co.*, ¶ 17, 486 P.3d at 995.  This Court has interpreted § 1-3-107 on previous occasions.  *See, e.g., Prokop v. Hockhalter*, 2006 WY 75, ¶¶ 9-11, 137 P.3d 131, 133-35 (Wyo. 2006); *Lucky Gate Ranch, LLC v. Baker & Assocs., Inc.*, 2009 WY 69, ¶¶ 14-23, 208 P.3d 57, 63-66 (Wyo. 2009); *Candelaria v. Karandikar*, 2020 WY 140, ¶¶ 21-28, 475 P.3d 548, 553-55 (Wyo. 2020).  Therefore, we analyze § 1-3-107 respecting our prior interpretations of the text.  *See Alpine Lumber Co. v. Capital West Nat. Bank*, 2010 WY 62, ¶ 12, 231 P.3d 869, 873 (Wyo. 2010) (recognizing the "special force" of established statutory interpretations).

[¶19]   Section 107(a) addresses "[a] cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services[.]"  Wyo. Stat. Ann. § 1-3-107(a).  "This language does not specifically refer to malpractice or tort actions, but rather applies to causes of action arising from the rendering of services."  *Prokop*, ¶ 13, 137 P.3d at 135.  Because § 1-3-107 is conditioned on the "cause of action," we have concluded the statute of limitation attaches to an act, error, or omission resulting from the rendering of professional services regardless of whether the claim is pled in tort or contract.  *Id.*, ¶¶ 15-16, 137 P.3d at 136; *see also Black's Law Dictionary*, 201 (5th ed. 1979)[3] (defining "cause of action" as "[t]he fact or facts which give a person a right to judicial relief" or alternatively, "[t]he right which a party has to institute a judicial proceeding.").

[¶20]   Tellingly, the parties do not argue § 1-3-107 is ambiguous and neither advances a textual argument with respect to the role contractual privity plays regarding the statute of limitation.  We have previously found § 1-3-107 is unambiguous. *Adelizzi v. Stratton*, 2010 WY 148, ¶ 13, 243 P.3d 563, 566 (Wyo. 2010).  As to privity, we similarly find § 1-3-107 unambiguous for two reasons.  First, the plain text does not create vague or varying interpretations.  *Vahai*, ¶ 27, 455 P.3d at 1227.  Second, we decline to allow a textual void, such as the absence of any reference to privity, to create an ambiguity because it is not our province to "read words into the statute when the legislature has chosen not to include them." *Adelizzi*, ¶ 11, 243 P.3d at 566.

---

[3] We find the dictionary definition from the period when § 1-3-107 was enacted instructive because "[t]he words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted." *Fraternal Order of Eagles Sheridan Aerie No. 186, Inc. v. State ex rel. Forwood*, 2006 WY 4, ¶ 56, 126 P.3d 847, 866 (Wyo. 2006) (citing *Farmers Auto. Inter-Ins. Exch v. MacDonald*, 140 P.2d 905, 913 (Wyo. 1943)).

[¶21] The unambiguous text in § 1-3-107 does not speak to the existence or absence of contractual privity. Instead, the plain text makes the limitation in § 1-3-107 dependent on the "cause of action" presented. Wyo. Stat. Ann. § 1-3-107(a). Privity may prove relevant in cases where it is a necessary element of the cause of action — such as a suit involving the alleged breach of a contractual duty. *See Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Eng'rs, Inc.*, 843 P.2d 1178, 1185 (Wyo. 1992) (explaining "[t]he distinction between a contract action and a tort action is that the breach of contract is the failure to perform a duty expressly stated or implied by the terms of the agreement, whereas a tort is the violation of a duty which is imposed by law."). However, in a tort action, the statute draws no such distinction.

[¶22] Therefore, in a tort-based professional malpractice action, the absence of contractual privity is not relevant in determining when the statute of limitation attaches to an alleged act, error, or omission by a licensed professional.[4]

## II.     In a tort action, the limitation in § 1-3-107 attaches to the design that was the legal cause of the plaintiff's injuries.

[¶23] We have already determined that the limitation in § 1-3-107 centers on the cause of action raised by the plaintiff. *See Prokop*, ¶¶ 15-16, 137 P.3d at 136. Therefore, the alleged act, error, or omission in the complaint serves as our starting point for determining when the statute of limitation attaches under § 1-3-107. *See Lucky Gate Ranch*, ¶ 15, 208 P.3d at 64 (determining the applicable limitation under § 1-3-107 by starting with the "act, error or omission" that provided the basis for the plaintiff's "cause of action"); *see also Vance v. Wyomed Laboratory, Inc.*, 2016 WY 61, ¶ 10, 375 P.3d 746, 748 (Wyo. 2016) (same).

[¶24] "When the cause of action for professional negligence sounds in tort, the elements are (1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Rino*, ¶ 19, 55 P.3d at 20 (citing *Linck v. Barokas & Martin*, 667 P.2d 171, 173 n.4 (Alaska 1983)) (internal quotation omitted). The plaintiff has the obligation to establish each element. *Id.* at ¶ 20.

[¶25] Bankers' claim against JTEC rests exclusively in tort and its second amended complaint alleges JTEC breached its duty when "it failed to design the mechanical system with good engineering practices and standards" and its failure to design the mechanical system was the direct and proximate cause of the Grossmans' damages. The amended

---

[4] We acknowledge there are instances where a professional malpractice case may present causes of action arising from both tort and contract. *See, e.g.*, *Rino v. Mead*, 2002 WY 144, ¶ 15, 55 P.3d 13, 19 n.1 (Wyo. 2002). In such scenarios, privity remains relevant to claims where a contractual relationship serves as the basis for the cause of action.

complaint does not allege a particular version of the water entry detail designed by JTEC was the source of the alleged failure.

[¶26] The parties do not dispute engineers are licensed professionals for the purpose of § 1-3-107. *See also* Wyo. Stat. Ann. § 33-29-401 (2023) (requiring license for "the practice of professional engineering"). There is also no disagreement JTEC was operating in its professional capacity when it rendered its engineering services for Studio Plaid. The parties both acknowledge the applicable standard of care for engineers, although Bankers disputes its relevance in answering the certified question. *See, e.g., Kemper Architects,* 843 P.2d at 1185 (recognizing in tort actions "[a]n engineer's duty is to exercise such care, skill, and diligence as people engaged in the engineering profession ordinarily exercise under like circumstances.").

[¶27] Given the parties' general agreement on these matters, this Court turns its attention to the third element of a professional negligence claim, proximate cause, which responds to the remaining portion of the certified question.

### A. An engineer's seal is evidence that a professional service was rendered but, in isolation, does not conclusively determine when the statute of limitation attaches.

[¶28] Bankers argues "the clearest date" of the alleged design error occurred "no later than" March 1, 2018, when JTEC stamped its third revision. The third revision of the design was the first documented instance in the record where the water filter and housing were placed upstream from the PRV. Bankers maintains this Court has held the use of a professional engineer's stamp or seal on a negligent plan constitutes the relevant act, error, or omission under § 1-3-107. JTEC does not dispute an engineer's seal represents a professional act but argues the design process is iterative and JTEC needed to make changes until the end of its contract with Studio Plaid, even if it made no changes to the water entry detail at issue. Thus, we need to determine if affixing a professional seal, in and of itself, triggers the statute of limitation.

[¶29] Bankers argues our ruling in *Pioneer Homestead* indicates courts have used an engineer's stamp date as the decisive date to determine when an act of negligence occurred under § 1-3-107. In that case, the engineer's completed design plan bore the engineer's seal as of June 1, 2004. *See Pioneer Homestead Apartments III v. Sargent Eng'rs, Inc.*, 2018 WY 80, ¶ 6, 421 P.3d 1074, 1077 (Wyo. 2018). But the engineer's stamp was not a dispositive factor in that case because the underlying claim of negligence rested exclusively on a single act — the completed June 1, 2004, plan. *Id.*, ¶ 18, 421 P.3d at 1079. *Pioneer Homestead* primarily focused on the applicability of the discovery rule under § 1-3-107, not on competing trigger dates.[5] *See id.*, ¶¶ 38-40, 421 P.3d at 1084 (evaluating whether

---

[5] Unlike *Pioneer Homestead,* the parties do not dispute the discovery date in our case.

damages discovered in 2006, 2007, and 2013 were attributable to the June 1, 2004, design plan).

[¶30]   In Wyoming, licensed engineers must affix their seal on original and non-original "copies, tracings or other documents" as required by Wyo. Stat. Ann. § 33-29-801 (2023). *See also* Wyo. Stat. Ann. § 33-29-601 (2023); *Wyoming Board of Professional Engineers and Professional Land Surveyor Rules*, ch. 5, § 1(c) (Mar. 24, 2020).   Except for certain oil and gas filings, Wyoming statute requires "all maps, plats, plans, designs and all other engineering and survey documents required to be filed or recorded in the state engineer's office, the office of state lands and investments, all county clerks' offices, all city or town offices, or any other office of public record in the state" to be "signed by and bear the seal of the professional engineer."[6]   Wyo. Stat. Ann. § 33-29-801(a)(i).

[¶31]   A professional engineer's seal is evidence of rendering a professional service in Wyoming.   *Id.; see also* §§ 33-29-201(ix), -601 (2023).   We have said that licensed professionals, including engineers "hold themselves out as professionals; it is their job to know their profession.   People rely on and trust them.   Failure to comply with either the accepted standards in the field or the standards society is willing to recognize as acceptable, is actionable."  *Hagar v. Mobley*, 638 P.2d 127, 138 (Wyo. 1981).   A professional's failure to perform a duty gives rise to a cause of action in tort and an award of damages for "all the detriment *proximately caused* by the breach of duty."  *Id.* at 139 (emphasis added).

[¶32]   However, the presence of an engineer's seal alone does not resolve which design triggered the statute of limitation when each version bears both the engineer's seal and the same alleged design error.   Common sense dictates a legal claim cannot have two different dates triggering the applicable statute of limitation.  *Cf. Duke v. Housen*, 589 F.2d 334, 343 (Wyo. 1979) (recognizing "[a] single act of negligence creates only one cause of action[.]").   While an engineer's seal is evidence of rendering professional services, it does not necessarily reveal which design or revision was ultimately used by a manufacturer or contractor.   Here, the engineer's seal does not reveal whether the plumbing subcontractor relied upon the third revision of JTEC's design plans related to the water entry detail, the fourth revision, the sixth revision, or some other version.   In other words, the seal reveals nothing about causation.   Therefore, we find a professional engineer's seal or stamp, in and of itself, inconclusive in calculating the statute of limitation when used on multiple versions of designs that all contain the same alleged deflect or flaw.

> **B.**     **The statute of limitation in § 1-3-107 attaches to the design that was a substantial factor in bringing about the alleged injury.**

---

[6] We note in this case, Bankers claim JTEC submitted "engineering-stamped design plans" to obtain a permit on August 29, 2017, but it concedes the record does not include JTEC's August 2017 filing with local officials and it remains uncertain whether those initial plans included the alleged defect in the water entry detail.

[¶33]   Bankers argues the operative act of negligence triggering the statute of limitation occurred "no later than" March 1, 2018, because that is the first documented instance where JTEC stamped a design with the filter and housing upstream from the PRV.  JTEC argues the statute of limitation attached May 31, 2018, when its professional services ended, and the final design was submitted to Studio Plaid.

[¶34]   The Wyoming and Nebraska professional malpractice statutes share similarities.[7] As such, we have cited Neb. Rev. Stat. § 25-222 and its interpretations by Nebraska courts when interpreting § 1-3-107.  *See, e.g.*, *Prokop*, ¶ 14, 137 P.3d at 135-36; *and St. John v. Wagner*, 2013 WY 69, ¶¶ 8-9, 302 P.3d 906, 908 (Wyo. 2013).

[¶35]   Nebraska embraces the "occurrence rule" to determine when the statute of limitation attaches under Neb. Rev. Stat. § 25-222.  *Rosnick v. Marks*, 357 N.W.2d 186, 190-91 (Neb. 1984) (recognizing "the rule in Nebraska that a cause of action for malpractice accrues upon the violation of a legal right.").  The Nebraska Supreme Court has reasoned "[a] negligent breach of [a] professional duty invades a legal right of one entitled to receive negligence-free services.  Thus, tortious invasion of another's legal right is the triggering device for the statute of limitations."  *Rosnick*, 357 N.W.2d at 190.  That court restated the occurrence rule, explaining the statute of limitation for a professional negligence action attaches "at the time of the act or omission causing injury."  *Suzuki v. Holthaus*, 375 N.W.2d 126, 128-29 (1985) (discussing the holding in *Rosnick*); s*ee also Gordon v. Connell*, 240 Neb. 769, 545 N.W.2d 722, 726 (Neb. 1996).

[¶36]   The Nebraska Supreme Court's ruling in *Reinke* demonstrates how the occurrence rule was applied in a case involving engineering designs.  *See Reinke Mfg. Co., Inc. v. Hayes*, 590 N.W.2d 380 (Neb. 1999).  There, a manufacturer hired an engineer to design a center pivot irrigation system for agricultural users.  *Id.* at 385.  After the engineer completed its work, and the center pivots were constructed with the design, the manufacturer received complaints from its consumers about the units.  *Id.*  The manufacturer initially worked with the design engineer to resolve the issue and even documented the defect internally before seeking outside assistance.  *Id.*  By the time the manufacturer filed suit, more than two years had elapsed since the engineer completed the center pivot design with the alleged defect.  *Id.*

[¶37]   The manufacturer maintained it did not sustain a legal injury until after it had given the engineer an opportunity to resolve the problem with faulty center pivots.  *Id.* at 388. The engineer argued the manufacturer's allegations related only to the initial design of the

---

[7] For example, the Wyoming and Nebraska statutes both adopt the same limitation period for professional malpractice actions and were enacted in near proximate state legislative sessions, with Wyoming's adoption coming after Nebraska's.  *See* Neb. Rev. Stat. § 25-222 (1972) (Laws 1972, LB 1132, § 1); Wyo. Stat. Ann. § 1-3-107 (1977) (Laws 1976, ch. 18, § 1; Laws 1977, ch. 188, § 1).  Both provisions also adopt the discovery rule.  *See Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541, 578 (Neb. 1994); *Dockter v. Lozano*, 2020 WY 119, ¶ 24, 472 P.3d 362, 369 (Wyo. 2020).

9

system, therefore, any legal injury occurred when the design was delivered (and before manufacturing) because that constituted the last instance in which the engineer could have failed in rendering services as a licensed professional. *Id.* at 388-89.

[¶38] The Nebraska Supreme Court started by considering which act led to the manufacturer's injury. *Id.* at 389. Recognizing a "[l]egal injury is the wrongful act or omission which causes the loss[,] it is not damage, which is the loss resulting from the misconduct[,]" the court then reviewed the manufacturer's allegations. *Id.* (citing *Rosnick*, 357 N.W.2d at 190). That court agreed with the engineer that the manufacturer's allegations only related to the design of the mechanical system and found the alleged error was "manifested in the design" of that system. *Id.* at 389. It then concluded "any act or occurrence of negligence in the design of the system occurred by the date [the engineer] had delivered the design to [the manufacturer] to begin manufacturing." *Id.*

[¶39] As a result, Nebraska courts recognize "[a] period of limitations begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain a suit." *Reinke*, 590 N.W.2d at 389 (citing *Witherspoon v. Sides Constr. Co.*, 362 N.W.2d 35 (Neb. 1985)). The Wyoming Supreme Court has long taken a similar approach, stating the general rule that the statute of limitation attaches to the wrongful act affording a legal remedy because "[t]he act itself is regarded as the ground of the action[ ] and is not legally severable from its consequences." *Duke v. Housen* 589 P.2d 334, 343 (Wyo. 1979).

[¶40] Our prior interpretations of § 1-3-107 confirm the occurrence rule is consistent with the text in the statute. In *Lucky Gate Ranch*, we recognized the term "accrues" does not appear in the text of § 1-3-107, unlike other Wyoming statutes of limitation. *Lucky Gate Ranch*, ¶ 19, 208 P.3d at 65 (comparing § 1-3-107 with Wyo. Stat. Ann. § 1-3-102). Based on a plain reading of § 1-3-107, and the absence of "accrued" from its text, we concluded "the time for filing suit is governed by the date when the 'act, error or omission' occurs, rather than the date when the cause of action accrues." *Id.* We also reiterated our long-standing position that the statute of limitation attaches when the law affords a remedy because "[t]he act itself is regarded as the ground of the action[ ] and is not legally severable from its consequences." *Id.*, ¶ 20 (quoting *Duke v. Housen* 589 P.2d 334, 343 (Wyo. 1979)).

[¶41] We did not need to apply our interpretation in *Lucky Gate Ranch* because the action was time barred regardless of whether the limitation attached to the act of negligence or the accrual of the plaintiff's alleged damages. *See id.*, ¶ 22. However, we later confirmed that our construction of the statute in *Lucky Gate Ranch* was correct. *Adelizzi*, ¶¶ 12-13, 243 P.3d at 566 (finding § 1-3-107 unambiguous and rejecting the concept of attaching the limitation to the date "when the cause of action accrues"). Accordingly, this Court has attached the statute of limitation to the act, error, or omission giving rise to the underlying cause of action. *See id.*, ¶ 13, 243 P.3d at 566 (finding the limitation ran the last day defendant performed professional services for plaintiff); *Pioneer Homestead*, ¶ 18, 421 P.3d at 1079 (recognizing plaintiff's claim against engineer defendant was "based entirely

10

on [the engineer's] work on the plans and specifications" for the building, so the limitation attached to the date the engineer completed the design); *and Falkenburg v. Laramie Inv. Co., Inc.*, 2023 WY 78, ¶ 16, 533 P.3d 511, 517 (Wyo. 2023) (concluding the limitation attached when the insurance policy went into effect because "the relevant act was the failure to obtain an insurance policy" covering a destroyed Quonset hut).

[¶42] Wyoming and Nebraska case law offer insight into addressing the scenario presented by the certified question. When presented with several sets of engineering plans, each containing the same alleged defective design, the court starts with the allegations in the complaint to determine what act, error, or omission led to the alleged injury. *See* Wyo. Stat. Ann. § 1-3-107(a)(i) (stating action shall be brought within two years "of the alleged act, error or omission"); *see also Reinke*, 590 N.W.2d at 389 (stating "[i]n order to determine when [the plaintiff's] cause of action accrued, we first determine what event constituted [the plaintiff's] injury."). When the act of negligence alleged in the complaint relates to the design of a mechanical system, "the act or occurrence which constitutes [the plaintiff's] injury is manifested in the design of the system." *Id.* at 389.

[¶43] Put differently, the limitation in § 1-3-107 attaches to the act, error, or omission that was "a substantial factor in bringing about the plaintiffs' injuries." *Wood v. CRST Expedited, Inc.*, 2018 WY 62, ¶ 10, 419 P.3d 503, 507 (Wyo. 2018) (stating "the ultimate test of proximate cause is foreseeability of injury" and defining "legal cause" as "the conduct must be a substantial factor in bringing about the plaintiff's injuries.") (quoting *Lucero v. Holbrook*, 2012 WY 152, ¶ 17, 288 P.3d 1228, 1234 (Wyo. 2012)); *see also Gayhart v. Goody*, 2004 WY 112, ¶ 16, 98 P.3d 164, 169 (Wyo. 2004) (discussing how plaintiffs must establish legal cause as a necessary element in a legal malpractice claim). When the limitation is triggered by the submission of a final design, it is not simply because the design was "final" but because that design was *used by other parties to construct or manufacture the object with the alleged defect*. *See, e.g., Pioneer Homestead*, ¶ 18, 421 P.3d at 1079; *Reinke*, 590 N.W.2d at 388.

[¶44] In some instances, a complaint may allege an engineer negligently designed a defective component on a specific date or in an earlier version before the plans were completed. There, the statute of limitation would attach to an alleged act of negligence associated with the earlier design assuming the plaintiff can sustain the cause of action by demonstrating the particular revision was the legal cause of the alleged injuries or damages. *See Rino*, ¶ 19, 55 P.3d at 20 (identifying the elements for establishing a professional malpractice cause of action in tort); *see also, ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 931 (Wyo. 1981) (same).

[¶45] We decline Bankers' invitation to apply the principle from *Metzger* that states, "where two constructions as to the limitation period are possible, the courts prefer the one which gives the longer period in which to prosecute the action." *Metzger v. Kalke*, 709 P.2d 414, 417 (Wyo. 1985). Bankers' argument ignores the preceding sentence in *Metzger*

11

which provides this Court is "mindful that the statute of limitations represents legislative and public policy controlling the right to litigate and that we must give full force to the applicable statute without regard to the merits of a particular claim." *Metzger*, 709 P.2d at 417. Although the parties dispute which revision to the water entry detail triggered the statute of limitation, their arguments do not present a concrete conflict with the construction of § 1-3-107. Having found § 1-3-107 is unambiguous with respect to the question presented, and given the unique procedural posture of this case,[8] we find it unnecessary to apply *Metzger* here.

[¶46]  Finally, we emphasize analysis of a statute of limitation is case and fact specific. *See Irene v. Seneca Ins. Co., Inc.*, 2014 WY 145, ¶ 22, 337 P.3d 483, 491-92 (Wyo. 2014) (stating when facts are in dispute "the applicability of a statute of limitations involves a mixed question of law and fact") (citation omitted); *see also Gordon v. Connell*, 545 N.W.2d 722, 774-75 (Neb. 1996) (stating "[t]he point at which a statute of limitations begins to run must be determined from the facts of each case[.]"). The Certification Order does not indicate which set of engineering plans were used to install the water entry detail at the Grossmans' residence (i.e., which plan was a substantial factor in bringing about the Grossmans' injuries). Thus, we cannot determine which revision was the legal cause of Bankers' alleged injuries based on the facts presented.

## CONCLUSION

[¶47]  In summary, we answer the certified question as follows:

1.  For purposes of § 1-3-107, the absence of contractual privity is not relevant in determining when the statute of limitation attaches in a tort action.

2.  In a cause of action alleging an engineer negligently designed a component part of an engineering plan, and when the engineer submitted several sets of plans, each containing the allegedly defective design, the statute of limitation in § 1-3-107 attaches to the design that was the legal cause of the alleged injuries. The legal cause is the alleged act, error, or omission that was a substantial factor in bringing about the plaintiffs' injuries. We do not have sufficient facts to determine which set of engineering plans were used by the plumber to install the PRV at the Grossmans' residence.

---

[8] As previously explained, this case presents the unique factual circumstance where the plaintiff argues an act at an *earlier date* triggered the statute of limitation to receive the two-year discovery extension period provided by § 1-3-107(a)(i), rather than the six-month extension provided by § 1-3-107(a)(iv) for discovery of an act, error, or omission within two years of its occurrence.

12